FIGUERS *v.* SHERRELL *et al.*

(*Nashville*, December Term, 1943.)

Opinion filed March 4, 1944.

PRIDE TOMLINSON, of Columbia, for complainant.

SEAY, STOCKELL & EDWARDS, of Nashville, for defendants.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The bill in this case was filed to establish title to certain shares of stock in a national bank. From an adverse decree the complainant took the case to the Court of Appeals where there was a decree in his favor. This Court has granted petition for *certiorari* and the case has been ably argued and briefed here.

In our view of the case some questions discussed by the lower courts are immaterial and certain controverted issues of fact are removed from our consideration by the concurrent finding of the two courts and the facts thus found are these.

Horace E. Sherrell, deceased, a resident of Lincoln County, upon the organization of the Union National Bank of Fayetteville, subscribed for 125 shares of its capital stock and a certificate was duly issued to him. Defendant H. M. Sherrell is the executor of the will of Horace E. Sherrell. Horace Howard Figuers, the complainant, is a nephew of Horace E. Sherrell and also a nephew of the executor, the two Sherrells having been brothers.

On January 9, 1936, Sherrell surrendered his certificate for 125 shares of stock to the bank and had that corporation issue in lieu three certificates, among which was one certificate for 25 shares issued in the name of the complainant. All the new certificates were receipted for and delivered to Sherrell on February 13, 1936. In 1938 a stock dividend was declared by the bank and a certificate for 12 shares of stock was issued in the name of complainant but was delivered to Sherrell at his request, he receipting therefor in the name of his nephew. Another stock dividend has been declared by the bank and 12 additional shares of stock written up on the stock book of the bank in the name of complainant but a certificate

for these additional 12 shares has not been delivered to anyone yet.

On June 30, 1936, a three per cent semi-annual dividend was declared by the bank and a dividend check made out payable to the complainant and sent to him. This dividend check was cashed by complainant but no other dividend check has ever been sent to him. On learning that the dividend check had been sent to his nephew, Sherrell notified the bank not to send any other dividend checks to the young man but to send them to him (Sherrell). All subsequent dividend checks, though made payable to the nephew, were delivered to Sherrell and he indorsed the checks with his nephew's name and used the proceeds.

Before each meeting of the bank's stockholders Sherrell would execute a proxy, signing his nephew's name thereto, authorizing the holder of the proxy to vote the stock recorded as his nephew's. The nephew knew nothing of the use of his name by Sherrell in the indorsement of the dividend checks and in the execution of the proxies.

Sometime before his death, Sherrell hypothecated the certificate for 25 shares and later the certificate for 12 shares as collateral security for loans at the American National Bank at Nashville, one of these loans having been made to a concern in which Sherrell was interested and another loan having been made directly to Sherrell. In so using the stock issued in the name of his nephew, Sherrell indorsed the certificates with his nephew's name and also executed the usual power of attorney in his nephew's name authorizing the transfer of the stock. It does not appear that the young man knew of this use of his name.

As we read the record, there is no evidence of any word or deed on the part of Sherrell at any time, except

procuring the issue of the stock in the nephew's name, indicating that Sherrell considered himself to have parted with ownership of the shares of stock or to have given them to his nephew. Up until the time of his death, Sherrell apparently looked upon the stock as his own to do with as he pleased.

Sherrell did not stand *in loco parentis* to his nephew. The nephew was named for his two uncles—Horace and Howard. Horace being the name of the deceased uncle and Howard being the name of the defendant uncle, the executor. The nephew lived with his mother in Columbia, she being a sister of the Sherrell brothers. The proof shows that he would visit his uncle Horace at times when he was a young boy and that the uncle would sometimes make small gifts to the nephew. At the time the stock was issued in his name, the complainant was a young boy in a preparatory school. Later he received an appointment to the Naval Academy and upon his graduation from that institution was commissioned as an officer in the Marines. Since going to the Naval Academy he has been in Tennessee at infrequent intervals when he was able to obtain leave.

The question presented for decision is whether there is a completed gift to another when a stockholder turns in his certificate of stock and has the corporation issue and record a new certificate in the name of another, but the holder of the old certificate has the new certificate delivered into his own hands and retains possession thereof until his death, nothing else being said or done by him tending to show a gift. Is there here such intention and delivery as is necessary to perfect a gift *inter vivos?* The chancellor answered this question in the negative. The Court of Appeals answered the question in the affirmative.

Each court sustained its conclusion by a well reasoned opinion supported by authorities. In fact the authorities are rather evenly divided on the question.

Leading cases sustaining the judgment of the Court of Appeals are *Reed* v. *Roberts,* 85 Pa., 84; *Chicago Title & T. Co.* v. *Ward,* 332 Ill., 126, 163 N. E., 319; *Phillips* v. *Plastridge,* 107 Vt., 267, 179 A., 157, 99 A. L. R., 1074.

Leading cases supporting the judgment of the chancellor are *Besson* v. *Stevens,* 94 N. J. Eq., 549, 120 A., 640; *Hudgens* v. *Tillman,* 227 Ala., 672, 151 So., 863; *Southern Industrial Institute* v. *Marsh,* 15 F. (2d) 347, (C. C. A. 5th), writ of *certiorari* denied 273 U. S., 747, 47 S. Ct., 449, 71 L. Ed., 872.

Other cases tending the one way or the other are collected in a note in 99 A. L. R., 1077, 1080. Of course the facts in each of the cases cited differ slightly as they differ slightly from the facts before us but these small differences are not important.

*Reed* v. *Roberts, supra,* sometimes referred to as Roberts' Appeal, may be called the parent of those cases ruling that a gift is completed by the transfer to the donee of shares of stock on the books of the corporation and the issuance of a certificate to the donee although the donor retains possession of the certificate. The *Roberts Case* is cited and followed in the others. The basis of the decision in the *Roberts Case* is the following statement of the law in Pennsylvania:

"But here the gift is complete by the delivery of the thing itself, for transferring the shares to her upon the books of the company is putting her in complete possession of the thing assigned, and clothing her with the complete legal title. It stands in the place of a delivery. Such an act performs precisely the office which an actual

delivery would perform if it were a chattel. It is as complete a delivery as the nature of the thing will admit of. There can be no clearer evidence of a design to part with the right of property in favor of another than an absolute transfer of the legal title to her for her own use. Retaining in his possession the certificates which are in her name, and which he could not use without her consent, cannot undo or qualify the decisive ownership with which he had invested her by the actual transfer to her on the books of the company. The best evidence of her ownership is the transfer on the books of the company. The certificates were but secondary evidence of her ownership, and only useful for purposes of transfer. They were nothing more than the official declaration by the company of what already appeared on their books." 85 Pa., 86, 87.

Similar expressions are contained in *Chicago Title & T. Co.* v. *Ward, supra, Phillips* v. *Plastridge, supra,* and other decisions in this line.

Such is not the law in Tennessee. Since *Cornick* v. *Richards,* 71 Tenn., 1, this Court has held that the title to shares of stock, both legal and equitable, follows lawful possession of the certificate and has refused in so many words to give the stock books of a corporation any such force as is given the public records in the register's office in determining questions of title.

Following *Cornick* v. *Richards* and subsequent cases cited, this Court in *Smith* v. *Railroad,* 91 Tenn., 221, 238, 18 S. W., 546, 549, said:

"The title of the purchaser upon the assignment of the certificate was complete without registration or transfer on the stock-books of the corporation. The rule requiring transfer on the books of the company, by the well-settled line of decisions in this state, and by the

great weight of authority in the courts of America, is a rule made solely for the benefit of the company. By it the company is enabled to know who are entitled to vote, and to whom it may pay dividends.''

The Court then goes on to say that a complete equitable and legal title is passed by the act of the owner in assigning a certificate of stock and that a subsequent registration of the assignment and issuance of a new certificate in no way affects the rights of the immediate parties.

In *Parker* v. *Bethel Hotel Co.*, 96 Tenn., 252, 284, 34 S. W., 209, 217, 31 L. R. A., 706, the Court said:

''There is no longer any doubt that the transfer and assignment of certificates of stock in a corporation, either by absolute sale or by way of pledge or security for debt, passes to the vendee or pledgee the title thereto. (Citing authorities.) Provision in the by-laws of the corporation, requiring the transfer to be made on the books of the company, is solely for the benefit of the corporation.''

It is clear, therefore, from our decisions that as between the parties thereto the completion of a sale or a gift cannot be made to depend upon entries on the books of a corporation where its shares of stock are involved. Title in this jurisdiction goes with the certificate.

The fact that we are dealing with shares of stock in a national bank, organized under the laws of the United States, does not affect the disposition of this case. It is true, as said by the Court of Appeals, that stock in a national bank is ''transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association.'' 12 U. S. C. A., sec. 52. The record before us does not show what by-laws, if any, the bank here had. Whatever the by-laws were, their scope is strictly limited.

In *Johnston* v. *Laflin*, 103 U. S., 800, 803, 804, 26 L. Ed., 532, 534, the Supreme Court said:

"Shares in the capital stock of associations, under the national banking law, are salable and transferable at the will of the owner. They are, in that respect, like other personal property. The statute recognizes this transferability, although it authorizes every association to prescribe the manner of their transfer. Its power in that respect, however, can only go to the extent of prescribing conditions essential to the protection of the association against fraudulent transfers or such as may be designed to evade the just responsibility of the stockholder. It is to be exercised reasonably. . . . As between Laflin and the broker, the transaction was consummated when the certificate was delivered to the latter, with the blank power of attorney indorsed, and the money was received from him. As between them, the title to the shares then passed; whether that be deemed a legal or equitable one matters not; the right to the shares then vested in the purchaser. The entry of the transaction on the books of the bank, where stock is sold, is required, not for the translation of the title, but for the protection of the parties and others dealing with the bank, and to enable it to know who are its stockholders, entitled to vote at their meetings and receive dividends when declared."

From the foregoing it will be seen that the Federal rule with reference to the transfer of title to national bank stock is not different from the rule in Tennessee with respect to the transfer of stock in other corporations. Moreover, we pointed out in *Heymann* v. *Hamilton National Bank*, 151 Tenn., 21, 266 S. W., 1043, 1045, that "while the formal transfer of stock on the books of a corporation is regulated by the law of the domicile of the

corporation, contracts with reference to the sale of shares of stock are usually governed by the law of the place of contract.''

It is therefore obvious that the entry of the complainant's name on the books of the corporation as the owner of the shares of stock here involved did not establish his ownership thereof either under the decisions of this Court or of the Supreme Court of the United States. Writing up a certificate of stock in the name of complainant, in our opinion, could have no more effect, when that certificate was never delivered to the recorded owner but was retained by the owner of the original certificate.

The Court of Appeals has very well stated the substance of the decisions in this State with reference to gifts as follows:

''Intention to give and delivery of the subject of the gift must clearly appear. Doubts must be resolved against the gift. There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. The burden of proving that a gift was made is upon the donee.''

See *Chandler* v. *Roddy,* 163 Tenn., 338, 43 S. W. (2d), 397, collecting and reviewing the decisions of this Court.

It may be conceded that Sherrell had the intention of giving these shares of stock to his nephew at some future time when he procured the certificate to be issued in the name of the latter. All the subsequent conduct of Sherrell however negatived the idea that he had any intention of giving to his nephew a present interest in the stock and a transfer of the present interest is necessary to the completion of a gift *inter vivos. Chandler* v. *Roddy, supra.*

We think that Sherrell never parted with his dominion and control over these certificates of stock issued in the

name of the complainant but delivered to Sherrell and retained all the while by him.

In the case of *Besson* v. *Stevens*, 94 N. J. Eq., 549, 566, 120 A., 640, 646, which we heretofore cited as denying that a gift of corporate stock is completed by a mere transfer on the corporate books,. delivery of. the certificate being withheld, a new certificate was left by the alleged donor with the corporation. The Court held that the former owner might have at any time stopped delivery of the new certificate to the daughter in whose name it was issued, if he acted before delivery, and the Vice Chancellor said this:

"Suppose testator, after receiving the new certificate from the company, had changed his mind and decided that he wanted the stock for himself; that Elsie had demanded the certificate from him and he had refused to give it to her. There is no doubt in my mind that Elsie's claim of ownership, in whatever court or by whatever form of action asserted, would not be sustained."

In the foregoing the New Jersey Court seems to have put and decided the very case that we have here before us.

Likewise the New York Court of Appeals in *Matter of Crawford et al.*, 113 N. Y., 560, 567, 21 N. E., 692, 693, 5 L. R. A., 71, had before it a case quite similar. The owner of coupon bonds had them registered in the name of another but the Court said it was unable to see "that such fact absolutely changed the legal title to them while the original owner continued to hold them, and failed to carry out his intention to give by a delivery of the bonds to the donee." Then the New York Court, by way of supporting its argument, put and decided the case we have before us, Judge PECKHAM saying:

"If an owner of shares of stock in a corporation, intending to give them to A., should take the scrip to the office of the company and surrender it and receive new scrip in the name of A., has he by this mere change of title on the books of the company, while retaining the entire possession and control of the scrip, and without any delivery thereof to A., accomplished a valid, executed gift of the ownership of the shares to his intended donee? We should say, 'Clearly not.' In this case the bonds belonged to the donor, as all agree, up to the time of the delivery for registry. After that, even if it be assumed that they were in consequence thereof rendered non-negotiable, how does that change the title? How does it divest the original owner of his right to the bond, and to its possession and control? Could the intended donee maintain an action against the donor to obtain its possession? We think not, and for the very good reason that it would not belong to him."

This expression is referred to and approved in *Southern Industrial Institute* v. *Marsh* (5 Cir.), 15 F. (2d), 347, heretofore cited.

The present case cannot be likened to *Wilson* v. *Wilson*, 151 Tenn., 486, 267 S. W., 364; *Royston* v. *McCulley* (Tenn. Ch. App.), 59 S. W., 725, 52 L. R. A., 899, and similar cases in which the donor continued some physical possession of a chose in action after making a gift. In these cases there were distinct and repeated statements and acts of the donor confirming the gift and it was held that his subsequent possession was as agent or trustee for the donee. Here, as we stated in the beginning, apart from having the new certificate issued in the name of his nephew Sherrell never said or did anything with the slightest tendency to show a present gift to his nephew.

On the contrary he collected and used the dividends on the stock and finally pledged the certificate for 25 shares and the certificate for the stock dividend to secure his own business obligations.

As a matter of course Sherrell's action in signing his nephew's name to the dividend checks, the proxies and power of attorney, was unauthorized and irregular. Perhaps these acts were relieved of moral turpitude by Sherrell's conviction that the shares of stock were his own property and that he could deal with them and appropriate their benefits as he pleased. Sherrell's action in these particulars is confirmatory of our conclusion that he had no intention of parting with the present interest in the stock and did not suppose he had done so. At any rate there was no delivery sufficient to complete the gift.

The law of those States whose courts have reached a conclusion contrary to ours herein apparently gives much greater force to entries on a corporation's stock books than is permissible under the law of this State. Indeed, by the Uniform Stock Transfer Act, Code, sec. 4094 *et seq.*, enacted in 1925, certificates of stock are made practically negotiable in this jurisdiction.

It results that in our opinion the decree of the chancellor was right and should be affirmed and the decree of the Court of Appeals is reversed.