## SLUSMEYER v. SLUSMEYER.
### Civ. No. 526.

United States District Court
W. D. Kentucky, at Paducah.

Aug. 31, 1951.

Richard R. Bryan, Paducah, Ky., for plaintiff.

Raymond C. Schultz and Goheen, Schultz & Shelbourne, all of Paducah, Ky., for defendant.

SHELBOURNE, Chief Judge.

This suit was instituted in the Graves Circuit Court by plaintiff Louis Slusmeyer for a declaration of rights as to the rightful ownership of $12,073 alleged by him to have been given him by his deceased Uncle Herman Slusmeyer on the morning of February 13, 1949. Suit was against Lillie Slusmeyer, individually and as Executrix of the estate of Herman Slusmeyer.

It was alleged that Lillie Slusmeyer was at the time of the institution of the action a resident of Graves County, Kentucky.

The suit was filed under Title 15, Chapter IV(a), § 639a–1 et seq., of the Kentucky Civil Code of Practice.

It was alleged by the plaintiff at the time of the institution of the action that the sum of $12,073, the subject of the alleged gift, had been placed in a bank at Paducah, Kentucky, for safe-keeping until the controversy between the plaintiff, claiming the money as a gift from decedent Herman Slusmeyer, and the defendant Lillie Slusmeyer, as Executrix of the decedent's estate and as the sole legatee under the will of Herman Slusmeyer, had been determined.

The defendant, Lillie Slusmeyer, seasonably filed her petition and bond for removal, claiming at that time to be a citizen and resident of the State of Tennessee.

Following the removal, the defendant filed her answer and counterclaim denying the material allegations of the petition, particularly with respect to the gift of the funds in controversy to the plaintiff by the decedent Herman Slusmeyer and claiming by counterclaim that she individually and as Executrix was entitled to the fund and alleged that on or about February 26, 1949, after the death of Herman Slusmeyer or on or about February 13, 1949, the plaintiff had wrongfully and without any right whatsoever taken a money box containing $12,073 in cash from the place where it was hidden in the basement of the home of defendant and decedent, Herman Slusmeyer in Memphis, Shelby County, Tennessee, and plead affirmatively that she be granted a judgment against the plaintiff in the sum of $12,073; that plaintiff be required to pay into the registry of the Court $12,073, and that a mandatory injunction be issued requiring plaintiff to deliver and pay over to defendant the funds admitted by him to be in his possession.

In a summary proceeding, on motion of the defendant, the plaintiff was required to deliver the fund of. $12,073 to the Clerk of this Court, who now has custody of the fund.

The case was tried to the Court without a jury and the Court, having considered the evidence finds the facts in this action, and states the Conclusions of Law applicable to this case as follows—

### Findings of Fact

I. Herman Slusmeyer died a resident of Memphis, Shelby County, Tennessee, on February 26, 1949, at the approximate age of seventy-five years. His death terminated an illness which was precipitated on the 13th of February previously, when decedent suffered a paralytic stroke, which continuously confined him to his bed until his death.

Approximately ten years prior to his death, Herman Slusmeyer retired as a locomotive engineer from the service of the I. C. Railroad, by which he had been employed all of his adult life. He had no children and he and his wife, by strict economy and thrift had accumulated property amounting in the aggregate to about $70,000.

His estate consisted of cash, U. S. Bonds and Postal Savings, and real estate.

II. For many years, decedent had kept concealed in his basement at his home in Memphis, cash, bonds and at times, some of his valuable papers, though at all times he had a safety deposit box in one or more banks in Memphis.

III. Plaintiff, Louis Slusmeyer, was a nephew of the decedent and resided near Paducah, in McCracken County. February 13, 1949, was on Sunday and on Friday previously, plaintiff Louis Slusmeyer and his wife Elizabeth Slusmeyer, his father Jim Slusmeyer, plaintiff's sister and her husband, Robert Goodwin, went to Memphis to visit decedent and the defendant Lillie Slusmeyer. On Saturday, the visitors and Herman Slusmeyer spent the day in Memphis and there was a discussion about Louis and his wife quitting their jobs at Paducah and moving to Memphis to look after Mr. and Mrs. Herman Slusmeyer, which discussion involved the conveyance of the Slusmeyer's home in Memphis to the plaintiff. When they returned to decedent's home that night, Elizabeth Slusmeyer says that the defendant told her "Herman wants you all to have this place so bad that we have decided to make the deed out to you, and make it out as love and affection, so you won't have to pay any inheritance tax on it."

On the following morning Herman Slusmeyer suffered a paralytic stroke and Robert Goodwin and Louis Slusmeyer testified that they assisted the decedent to go to the bathroom and "that while in the bathroom he told Louis to get the box in the basement, take it home with him, saying 'it is yours.'"

Louis Slusmeyer and Goodwin state that sometime in the forenoon on that Sunday Louis Slusmeyer went to the basement, got the box, placed it in the trunk of his automobile and told Robert Goodwin to tell his wife Elizabeth when she returned from

486

Paducah to take care of the box until Louis got there. About noon on that Sunday, Robert Goodwin, his wife and Louis Slusmeyer's wife returned from Memphis to Paducah and plaintiff Louis Slusmeyer remained in Memphis until the following Wednesday afternoon.

IV. On Saturday February 26th, Louis Slusmeyer was called from Memphis and told that his Uncle was worse and on that occasion, Jim Slusmeyer, Louis' Father, his wife, Elizabeth and his sister Mrs. Goodwin went to Memphis, arriving there before Herman Slusmeyer's death during the night.

Herman Slusmeyer's funeral was conducted in Memphis on Sunday afternoon and he was then brought back to Paducah and buried in the lot of his brother Jim Slusmeyer, on Monday February 28th.

Defendant, Lillie Slusmeyer, spent Monday and Tuesday night after the burial at the home of her niece Jessie Clark in Mayfield and on Wednesday evening Louis Slusmeyer, his wife and daughter went to Mayfield by car and brought defendant to their home, where she stayed and the next morning after Louis Slusmeyer's wife had gone to work, plaintiff testifies that he told his Aunt about the gift of the box to him by his Uncle and that she expressed satisfaction that he had gotten it and that on that morning he gave her the $20,000 of U. S. Government bonds, which were in the box and that she took them and told him to keep the money and further told him— "don't tell anybody; don't tell Charley Church; don't let them know nothing about them".

Charley Church was her nephew who lived in Memphis.

V. Defendant Lillie Slusmeyer spent Thursday night at the home of Mrs. Goodwin and Friday night at the home of Jim Slusmeyer and on the following afternoon plaintiff took her to Mayfield to the home of Mrs. Clark, promising to return on the following Sunday to bring her back to his home. Pursuant to that promise, plaintiff did return for her Sunday morning and the defendant visited the cemetery on Sunday afternoon and she remained until Monday afternoon, when Mr. & Mrs. Clark came and took her back to Mayfield.

Plaintiff testifies that a few days after her return to Mayfield, he received a call to come to Memphis and was asked to procure a truck so he could bring a portion of Mrs. Slusmeyer's household belongings back to Western Kentucky, where she stated she then intended to make her home. He did go to Memphis, but did not procure the truck and did not bring back any furniture.

A few days after that, defendant demanded of plaintiff that he return the money to her or to her nephew Charley Church, whereupon he consulted a lawyer and filed this action.

Louis Slusmeyer is corroborated by his brother-in-law Robert Goodwin, his father Jim Slusmeyer, and his wife Elizabeth.

VI. Lillie Slusmeyer testified that on Thursday morning following the burial at Louis' home, Louis Slusmeyer showed her the box, which his Uncle had given him and gave her the bonds and that she "never thought nothing about the money. I was thinking about Herman so, I didn't have my mind on nothing else."

She further testified by deposition about the first of March 1950 and on the trial that she and her husband had often discussed what they would do with their property and that they had decided that the money would be divided equally between her family and his family.

The metal box, in which the money and bonds were kept in the basement of Herman Slusmeyer's home, was said by Mrs. Lillie Slusmeyer to have been equipped with a lock and key which she always kept.

Louis Slusmeyer and his wife Elizabeth said that the box had no lock and Louis Slushmeyer's explanation of why he threw the box away is not impressive.

VII. Herman Slushmeyer died testate and by the terms of his will, which was admitted to probate in Shelby County, Tennessee, Lillie Slusmeyer was devised all of decedent's property of every kind.

Following his death, she duly qualified as Executrix. Counsel for both plaintiff and defendant waived any objections to testimony by Louis Slusmeyer and by Lillie Slusmeyer as to conversations and transactions had with the decedent.

VIII. There can be no doubt about the box containing the money and the bonds being concealed in the basement of Herman Slusmeyer's home. Pryor Sutherland said that a number of times Herman Slusmeyer in witness' home had mentioned the fact he had the box concealed in his basement, and wanted Sutherland to know the box was there so if anything happened to him the box would be found.

The box was shown by decedent to his brother Jim Slusmeyer and to the plaintiff Louis Slusmeyer in the home in Memphis and decedent had said to his brother Jim Slusmeyer that he had something there for Louis and on one occasion that he intended to fix Louis up.

## Conclusions of Law

I. This Court has jurisdiction of this action, because of diversity of citizenship between plaintiff and defendant and the amount in controversy.

II. The validity of the gift of $12,073 in controversy here is controlled by the law of Tennessee. In the case of Scott v. Union & Planters' Bank and Trust Company, 123 Tenn. 258, 279, 130 S.W. 757, 762, after reviewing many authorities the Supreme Court said: "It will be seen that these and other of our cases make the question of legal delivery depend largely upon the intention of the parties. In Swiney v. Swiney [82 Tenn. 316, 320], 14 Lea. [316], 320, it was announced, as was done before, and has been frequently since, that what will amount to a delivery is a question of intention; the court saying: 'Other cases settled the principle that whether the mere execution and delivery to the register for registration will amount to a delivery is a question of intention.' And in Sheegog v. Perkins, supra [63 Tenn. 273], where the validity of a gift causa mortis was presented, the court in its opinion collated 'the stronger points of the testimony bearing upon the question involved' in order to give the complainant the benefit of the whole case in ascertaining the intention of the donor in the transaction in question. Treating this as pivotal, the court said: 'The question in any event resolves itself into one of intention.' Upon an examination of authorities outside of the state, it will be found that this is the prevailing doctrine."

The Court there quoted from Weaver v. Weaver, 182 Ill. 287, 55 N.E. 338, 74 Am. St.Rep., 173, the following: "The usual mode of delivery is the manual transfer from the grantor to the grantee. But it is too well understood to call for the citation of authorities that the declarations and conduct of the grantor in relation to the instrument may be such as to become equivalent to such actual delivery, and in every such case the crucial test is the intent with which the acts or declarations are made, and that intent is to be ascertained from the conduct of the parties, *particularly the grantor, and all the surrounding circumstances of the transaction.*" (Emphasis added.)

And further on page 283 of 123 Tenn., on page 764 of 130 S.W.: "An examination of the modern cases all show, while courts will scrutinize with care the evidence upon which gifts causa mortis are sought to be sustained, and will require in every case clear and convincing proof, yet, when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained."

In the case of Dietzen v. American Trust and Banking Company, 175 Tenn. 49, 131 S.W.2d 69, 71, delivery was held to have been accomplished by delivering to a son the key to a safety deposit box where the securities were kept and a portion of which the donee's son removed, a portion of which he permitted to remain in the box. The Court held this to be a valid gift and quoted with approval from Scott v. Union & Planters' Bank and Trust Company, supra, the following: " * * * when it is once ascertained that it is the intention of the donor to make such a gift, and all is done which is possible under the circumstances in the matter of delivery, the gift will be sustained."

In Chandler v. Roddy, 163 Tenn. 338, 340, 43 S.W.2d 397, 400, the Court said the way to effect a valid delivery " * * * is to place the subject of the

488

gift under the control and dominion of the donee, and his title and right to possession become * * * irrevocable."

That the intention of the donor measured by such acts as are practicable under the existing circumstances is the determining factor, is decided in other cases, among which are—Collins v. McCanless, 179 Tenn. 656, 169 S.W.2d 850, 145 A.L.R. 1380; Figuers v. Sherrell 181 Tenn. 87, 178 S.W.2d 629, 152 A.L.R. 420.

On the whole case, the Court is of the opinion that on Sunday February 13, 1949, decedent Herman Slusmeyer did deliver the box containing the cash in controversy in this suit, and bonds not here in dispute, to his nephew Louis Slusmeyer and that this delivery was consummated by the decedent telling Louis Slusmeyer to go to the basement and get the box and keep it as his own and subsequently on that same day inquiring of his nephew if he had gotten the box and upon being told that he had gotten it, the decedent told him to keep it, "it is yours and say nothing about it".

■ This constituted a complete gift and terminated any dominion or ownership on the part of Herman Slusmeyer to the contents of the box. Herman Slusmeyer, at that time, was not physically able to go to the basement because of his affliction with paralysis.

"The case, then, resolves itself into this". Scott v. Union & Planters' Bank and Trust Company, supra. [123 Tenn. 258, 130 S.W. 767.]

An old childless man, who had accumulated an estate of more than Seventy Thousand Dollars, shown by the evidence to have been long of the desire that the people of his own blood should share in enjoying, at least to some extent, the fruits of his labors, following an affliction which he doubtless regarded as the beginning of the end, gives to the nephew, who it appears was kind to him in health and the first to be summoned, and unfailing in his response, to attend him in illness, an amount of his assets equal to about fifteen percent of the whole.

To infer from the proof in this case that Louis Slusmeyer stole the box from the basement after his Uncle's death (the only alternative suggested other than its receipt as a gift) would be to mould an unsupported sinister suspicion into facts, and fasten a cowardly crime upon a man of proven good reputation for honesty and probity among representative people among whom he had lived and worked all of his life.

The testimony of Louis, Jim and Elizabeth Slusmeyer and Robert Goodwin is clear and convincing that it was the intention of decedent to make the gift and that in furtherance of that intention he did all he was physically able to do, under the circumstances, to consummate the gift.

The defendant, Lillie Slusmeyer, admittedly learned of the gift on Thursday March 2, 1949, and registered no objection and voiced neither a doubt of its having been made nor objection to it for a week or more thereafter and then through the agency of her kindred who may have aided her materially in deciding that the gift had not been made.

A judgment in conformity with this memorandum, adjudging the validity of the gift and adjudging title to the $12,073 to Louis Slusmeyer, will be presented by Counsel for plaintiff, upon notice.