## ROSE v. PARKER et al.—251 S. W. (2d) 320.

Eastern Section.   March 20, 1952.

Petition for Certiorari denied by Supreme Court, July 11, 1952.

Leonard E. Ladd, of Harriman, for appellants.

R. H. Ward, of Kingston, for appellee.

HOWARD, J.   The bill in this cause was filed to establish title to stock certificate No. 328, representing ten shares of stock in the Kingston Bank & Trust Company, at Kingston, Tennessee.

The bill alleges in substance that Flo Parker Rose, now deceased, was the wife of complainant, and that complainant is the legally appointed administrator of his wife's estate; that at the time of her death she was the owner of said stock certificate, which she had, prior to her death, entrusted to her father, J. S. Parker, and that after his death the defendants got possession of said certificate along with other papers belonging to his estate.

The bill further alleges that the dividends declared and paid on said stock have, since Flo Parker Rose's death, been paid to her two sons, Hugh M. Rose and Charles P. Rose, and that prior to her death the tax schedules in the Tax Assessor's Office of Roane County show that she was the owner of said stock, and since her death the tax schedules show that said stock has been assessed in the name of her heirs.   The bill prayed that a writ of replevin issue, and that said stock certificate be taken out of the defendants' possession and delivered to complainant.

By their answer the defendants deny that Flo Parker Rose ever purchased or paid anything for or ever actually owned the stock; that J. S. Parker had the stock issued in her name to avoid the payment of taxes, and further that said stock certificate was indorsed by her to J. S. Parker; that subsequently said stock certificate was pledged by J. S. Parker to one of the defendants, Henry Parker, to secure a loan of $600, which had not been paid on the date of J. S. Parker's death. They aver that the stock certificate was cancelled in 1934, shortly after J. S. Parker's death, and that certificate No. 348 was issued in lieu thereof to Howard Parker, Trustee, one of the defendants, he being one of the Trustees of J. S. Parker's estate. They admit that the two sons of Flo Parker Rose are entitled to one-tenth of the ten shares in question, but deny that either of her sons, or their father, the complainant, ever claimed any interest in said certificate previous to the filing of this suit. They further aver that the bank paid all taxes assessed against the stock and that the tax schedules do not correctly show the ownership of said stock. They plead the Statute of Limitations of 18 months, 2 years, 3 years, and 7 years in bar to the suit.

Upon the hearing the Chancellor sustained the bill and held that the stock in question belonged to the estate of Flo Parker Rose, and a decree was accordingly entered awarding the stock certificate to complainant. From this decree the defendants have appealed and numerous errors have been assigned, complaining of the findings and conclusions of the Chancellor. As will hereinafter appear, we think that the learned Chancellor erred in holding that the stock in question belonged to Flo Parker Rose's estate.

The record discloses that complainant is the husband of Flo Parker Rose, who died intestate on June 30, 1930.

He qualified as administrator of his wife's estate on August 27, 1946, in the County Court of Roane County, and shortly thereafter filed this suit. Rose and his wife had two sons, Hugh M. Rose and Charles P. Rose, both of whom are now of age, but not parties hereto. They are the sole heirs of their mother, and for several years after her death they lived at the home of their maternal grandparents, the J. S. Parkers.

The defendants, · R. S. Parker, Henry Parker and Howard Parker, are the sons of J. S. Parker, deceased, and the brothers of Flo Parker Rose. On the date of his death, May 23, 1934, and for several years prior thereto, J. S. Parker was an outstanding citizen and one of the leading bankers in east Tennessee.

It appears that sometime previous to 1924, J. S. Parker and a business associate, C. M. Rose, acquired practically all of the stock in the Kingston Bank & Trust Company. At that time Rose was President of the Bank and Parker was its Cashier, which position he held until his death. They both had large families and decided to issue certificates representing ten shares of stock, valued at that time at about $1,000, to each of their respective children so that the stock could be assessed in their names and be free of tax under the personal exemption statute, as the bank paid all taxes on stock not exempt. Accordingly, the plan was put into effect and on January 2, 1924, stock certificate No. 328 was issued in the name of Flo Parker Rose, and her name, as well as the names of all the others to whom certificates were issued, according to the plan, was entered on the records of the bank by Parker who also filed tax schedules with the Tax Assessor's Office of Roane County showing her as the owner of the stock. However, both Rose and Parker retained possession of the stock certificates, received the dividends and voted the shares

50

by proxy at the stockholders' meetings. After Flo Parker Rose's death in 1930, and up until the death of J. S. Parker in 1934, the assessment was made in the name of Flo Parker Rose, or her heirs.

The record further discloses that stock certificate No. 328 was indorsed by Flo Parker Rose on July 31, 1928, and that J. S. Parker, on December 31, 1931, after her death pledged it to his son, Henry Parker, to secure a $600 loan which at the time of his death had not been repaid. The loan note to which the certificate was attached specifically gave the holder the right to sell or transfer any security attached thereto. It also appears that R. S. Parker to whom a certificate representing an equal number of shares was issued, also indorsed said certificate and retransferred it to his father shortly after the plan was put into effect. R. S. Parker stated that his father told him at the time that the stock was being issued in this manner only for tax purposes.

By the terms of his will J. S. Parker named two of his sons, Henry and R. S. Parker, as executors of his estate, which was at the time of his death heavily involved financially and thought to be insolvent, because of the depression. In handling the affairs of the estate it was agreed by the executors, as well as by the adult heirs, that the ten shares of stock held as collateral by Henry Parker would be transferred to a Trustee who would hold it until after the expiration of 18 months, the period allowed creditors for filing claims against the estate, and the executors were authorized to transfer to Henry Parker seven other shares of stock owned by the estate in payment of his note. Accordingly, on August 8, 1934, stock certificate No. 328 was surrendered at the bank and a new certificate, No. 348, was issued in lieu thereof to Howard Parker, Trustee.

In 1936, after all the debts against the estate had been paid, all the Parker heirs except complainant's two sons, who were minors at the time, entered into a written agreement to transfer all the remaining assets of the estate to Howard Parker and J. C. Parker, Trustees, the income therefrom to be used for the use and benefit of the widow of J. S. Parker and said minors.

No stock dividends were paid by the bank for the years 1934 to 1938 inclusive, but were paid from 1939 to 1948, except for the year 1945, and all dividend checks were made payable to Howard Parker, Trustee. However, in 1946 and 1947 the bank, at the Trustee's request, sent the dividends to complainant's two sons, Hugh C. and Charles P. Rose. There is also proof that the Rose boys received the dividends on previous occasions, and complainant relies a great deal upon these payments to prove his case. We think that these transactions are satisfactorily explained by Clyde Parker, brother of the defendants and Cashier of the bank since 1946, who was introduced as a witness on behalf of the complainant. Clyde Parker explained that the dividends were equally divided between the Rose boys as a gift from the Parker family; that the Parker family had raised the two boys and thought that it would be a good gesture to make them a gift of the dividends. This witness testified that one of the boys, Charles P. Rose, lived with the Parker family until 1937, and that the other boy lived there through May, 1941, at which time he graduated from High School and immediately thereafter joined the Army. He further said that Howard Parker, as Trustee, had since 1934 voted the ten shares of stock without objections at the stockholders' meetings, and that the minority of each of the Rose boys was removed in 1941.

52

It definitely appears that there had been a controversy between the Rose and Parker families regarding the ownership of the stock in question since shortly after the death of J. S. Parker. Howard Parker testified that in 1936 or 1937 he had a discussion with Charles P. Rose, one of the boys, regarding the stock and that he tried to get Charles to go to the bank to look at the certificate, which he refused to do; and complainant admitted that Howard Parker told him two or three months after J. S. Parker's death that he was going to be appointed Trustee, and that Howard further told him in 1940 or 1941 that the Parkers had decided not to give the Rose boys the stock.

It is undisputed that the original transfer of the stock to Flo Parker Rose was fictitious and made solely to evade taxes, and it is apparent that J. S. Parker did not retain the stock for safe-keeping, as insisted, as in that case no indorsement would have been necessary. It appears that up until the time of his death Parker looked upon the stock as his own to do with as he pleased. He not only retained possession of the stock and kept the dividends, but he also pledged it to one of his sons to secure a loan, thereby indicating that he retained ownership. In Figuers v. Sherrell, 181 Tenn. 87, 178 S. W. (2d) 629, 632, 152 A. L. R. 420, a case involving an alleged gift of stock and similar in many respects to the present case, the Supreme Court said:

"Intention to give and delivery of the subject of the gift must clearly appear. Doubts must be resolved against the gift. There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. The burden of proving that a gift was made is upon the donee."

If we concede that J. S. Parker intended to give the stock to his daughter, her subsequent indorsement of the certificate, followed by his pledge of the stock for a loan, negatived this idea, as a stock transfer is complete when the certificate is indorsed and delivered. Code Sec. 4094. In discussing the requirements of a transfer, our Courts have said:

"The title of the purchaser upon the assignment of the certificate was complete without registration or transfer on stock-books of the corporation. The rule requiring transfer on the books of the company by the well-settled line of decisions in this state, and by the great weight of authority in the courts of America, is a rule made solely for the benefit of the company. By it the company is enabled to know who are entitled to vote, and to whom it may pay dividends." Smith v. Railroad, 91 Tenn. 221, 238, 18 S. W. 546, 549.

"There is no longer any doubt that the transfer and assignment of certificates of stock in a corporation, either by absolute sale or by way of pledge or security for debt, passes to the vendee or pledgee the title thereto. * * * Provision in the by-laws of the corporation, requiring the transfer to be made on the books of the company, is solely for the benefit of the corporation." Parker v. Bethel Hotel Co., 96 Tenn. 252, 284, 34 S. W. 209, 217, 31 L. R. A. 706.

"* * * a complete equitable and legal title is passed by the act of the owner in assigning a certificate of stock and * * * a subsequent registration of the assignment and issuance of a new certificate in no way affects the rights of the immediate parties."

"It is clear, therefore, from our decisions that as between the parties thereto the completion of a sale or a gift cannot be made to depend upon entries on the books of a corporation where its shares of stock are involved. Title in this jurisdiction goes with the certificate." Figuers v. Sherrell, supra.

Furthermore, it appears that if Flo Parker Rose's estate owned the stock her father committed an act of conversion when he pledged it for a loan, in which case the 18 months limitation for filing claims against his estate would apply. Code Sec. 8608. Also Code Sec. 8610 requires that "All actions against the personal representative of a decedent, for demands against such decedent, shall be brought within seven years after his death, notwithstanding any disability existing; otherwise they will be forever barred."

It results that the assignments of error are sustained, and the decree of the Chancellor is reversed at complainant's costs.

McAmis and Hale, JJ., concur.