IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2005 Session

## IN THE MATTER OF:  FRANK G. BARTON, JR., deceased.

## PATRICIA LEVINE v. ESTATE of FRANK G. BARTON, JR.

**An Appeal from the Probate Court for Shelby County**
**No. C0007922     Donn Southern, Judge**

_____

**No. W2004-02913-COA-R3-CV - Filed December 28, 2005**

_____

This is a claim against an estate.  The claimant and the decedent had a romantic relationship.  After the decedent's death, the claimant filed a claim against the decedent's estate, based on alleged promises of financial support by the decedent in the course of their relationship.  The estate moved for summary judgment.  The trial court granted the motion, ruling that the claimant could not establish the existence of an enforceable contract or a valid gift.  We affirm.

**Tenn. R. App. P. 3 Appeal; Judgment of the Probate Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which FRANK P. CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

William M. Monroe, Mark A. Renken, Memphis, Tennessee, for claimant/appellant Patricia Levine.

Eugene J. Podesta, Jr., Lee Harris, Memphis, Tennessee, for appellee Estate of Frank G. Barton, Jr.

**OPINION**

In November 1980, Frank G. Barton, Jr. ("Barton") and Claimant/Appellant Patricia Levine ("Levine")  met through a mutual friend in Memphis, Tennessee.  At the time, Barton was married with three children.  Despite this fact, they began a romantic relationship.  The on-again, off-again relationship continued until Barton's death in 2003.  Over the course of their twenty-three year relationship, Barton remained married, but nevertheless provided Levine with financial support and numerous gifts.

In June 1988, Levine left Memphis, Tennessee, and moved to California to be close to her daughter.  During this time, she continued to support herself.  However, Barton apparently wanted

Levine to return to Memphis, and sent her an undated letter while she was living in California. The letter declared:

> If your desire is to move back to Memphis or any other part of the country, please do not hesitate because of financial concerns. Knowing this would be extremely hard for you to do, it would give me a great deal of pleasure to know I helped in some small way. I'm not talking about the short term but the long term, until to (sic) are settled comfortably financially. (However long that takes.)

The note was written on Barton's personal stationary, and it is undisputed that it is in his handwriting.

In 1993, after Levine received the above-noted letter from Barton, she returned to Memphis. After Levine returned to Memphis, Barton provided substantial financial support to her, although she maintained a separate bank account for incidental items. Barton paid Levine's monthly bills, provided health insurance for her, bought her two cars, gave her between $8,000 and $12,000 per month, and bought her a condominium in Germantown as well as an additional house in Memphis.

In 2002, Barton gave Levine $250,000 to invest in an investment opportunity in Arkansas ("Arkansas Investment"). Barton invested a substantial sum in the Arkansas Investment. The investment required Levine to lend the money to David Howell, which would then be repaid at a substantial interest rate. However, Mr. Howell unexpectedly died, and defaulted on his obligations. Levine lost the $250,000 Barton had given to her to invest. A class action suit was initiated by various investors in the Arkansas Investment to recover their lost investments. Levine maintains that she was encouraged to withdraw from the class action because Barton became afraid that their relationship would become public.

Barton died on May 11, 2003, leaving his wife of forty-eight years and his three children. Barton's family was apparently unaware of his liaison with Levine. Three years before his death, Barton executed a last will and testament. Levine was not included in Barton's will.

Shortly after Barton's will was offered to probate in 2003, Levine filed a verified claim against Barton's estate for an amount "to be determined, but no less than $250,000." The claim stated that it was based upon "promises of payments and reimbursement," but did not elaborate on the substance of the alleged promises. The verified claim form required Levine to specify the date of the "items and nature of claim." Levine entered "1-1-01 and later." This claim was apparently the first notice to Barton's family of his twenty-three year relationship with Levine.

On October 28, 2003, co-executor Keithley Barton, on behalf of Respondent/Appellee Estate of Frank G. Barton, Jr. ("Estate"), filed an exception to Levine's claim in the Shelby County Probate Court. He argued that the Estate was not indebted to Levine because she failed to comply with the requirements of Tennessee Code Annotated section 30-2-307(b), which requires that the claimant provide an itemized statement of the account.

In the months following the filing of Levine's claim against the Estate, several witnesses were deposed regarding the nature of Levine's relationship with Barton, as well as the extent of any promises or obligations made by Barton to financially support her or reimburse her for the money lost in the failed Arkansas Investment.

Levine testified at length about her relationship with Barton. She maintained that she supported herself until she returned to Memphis from California in 1993. At that time, Barton began to financially support her, and she asserted that she would not have come back to Memphis from California without his promise to take care of her. Levine testified in detail about the many gifts Barton gave to her between 1993 and 2003, and she acknowledged that they were unconditional:

> Q: And that transfer [one of the houses Barton provided Levine] was just as it has been described, a gift, was it not?
> A: Yes, sir.
> Q: It was made out of . . . detached and disinterested generosity; is that right?
> A: Yes, sir.
> Q: . . . And there were no strings attached to that gift, were there?
> A: No, sir.
> Q: There was nothing that you were supposed to do or refrain from doing in order to receive that gift.
> A: No, sir.
> Q: No conditions were imposed?
> A: No, sir.
> Q: And that's true of everything [Barton] did for you, isn't it?
> A: Yes, sir.

Most of Levine's testimony, however, concerned alleged promises made by Barton to financially support her. She explained that the "promises of payments and reimbursements" she referred to in the claim she filed against the Estate included a promise by Barton to reimburse her for the failed Arkansas Investment and a separate assurance, before he died of cancer in 2003, that he intended to take care of her financial needs. Levine testified that she never expected to be a part of Barton's will, but that she did, however, expect to be reimbursed for her loss and to be financially provided for after his death. Levine had no evidence of Barton's promises other than her testimony and the note written to her in California.

Several other witnesses testified as well. Bruce Thompson, a friend of Barton's, recalled that Barton made unspecific statements that he intended to reimburse Levine for her losses in the Arkansas Investment. Mr. Thompson admitted that Barton "was not explicit in terms of what he meant." Jane Mazer, a long-time friend of Levine, testified that Barton told Ms. Mazer that he would take care of Levine as long as she needed it. Ms. Mazer said that Barton did not elaborate on what he meant by "take care."

Levine's daughter, Kimberly Loper, testified that Barton discussed with Ms. Loper "his [Barton's] intentions to make sure my mother [Levine] was financially secure and that it would not be anything for me to worry about." Much like Ms. Mazer, however, Ms. Loper was unable to provide any more detail regarding Barton's intentions.

On June 8, 2004, the Estate filed a motion for summary judgment. The Estate argued that it was entitled to a judgment, as a matter of law, for three reasons: (1) Barton did not make a legally cognizable gift to Levine; (2) no enforceable contract was ever created between Barton and Levine; and (3) any promise by Barton to guarantee Levine's investment in the Arkansas Investment, under either a gift or contract theory, violated the Statute of Frauds. The Estate argued as well that any testimony by Levine about Barton's alleged oral promise to repay the amount lost in the investment was inadmissible under Tennessee's Dead Man's Statute.

On October 18, 2004, the trial court entered an order granting the Estate's motion for summary judgment. The trial court's memorandum opinion analyzed in detail Barton's alleged promise to repay the lost investment and his alleged promises to take care of Levine's financial needs.

The trial court first addressed the alleged promise to repay Levine's losses in the Arkansas Investment. Under a gift theory, the trial court concluded that Levine could prove neither (1) Barton's intent, because the only evidence available to her would be precluded under Tennessee's Dead Man's Statute, T.C.A. § 24-1-203, nor (2) any valid delivery of the alleged inter vivos gift. Under a contract theory, the trial court concluded that Levine failed to establish the existence of a valid offer or any consideration for the purported contract.

The trial court then addressed Barton's alleged promise to take care of Levine's financial needs. It noted three possible theories of recovery—contract implied in fact, partial performance, and detrimental reliance/promissory estoppel. Under the contract implied in fact theory, the trial court noted that Barton's vague promise to take care of Levine was "ambiguous at best," and observed that "it is unclear how [Levine] could quantify her damages." The trial court concluded that any amount of damages, other than the $250,000 representing the Arkansas Investment, would be based on pure speculation.

Addressing promissory estoppel, the trial court noted that "the promise here is unquestionably ambiguous, its terms are vague, and any damages would be purely speculative." Finally, on partial performance, the trial court characterized Levine's argument as "misplaced," because the Estate only asserted the Statute of Frauds defense to the alleged promise to guarantee the Arkansas Investment, and never argued that the claim to provide continued financial support violated the Statute of Frauds. It was therefore inappropriate for Levine to argue for an exception to the Statute of Frauds based on partial performance, in order to recover for the alleged promises of financial support. For these reasons, the trial court dismissed Levine's claims. Levine now appeals.

On appeal, Levine argues only that the trial court erred in granting the Estate's motion for summary judgment because there were "contested genuine issues of material fact and [] a valid and enforceable contract existed between Patricia Levine and Frank G. Barton, Jr."

Summary judgment is only proper when the moving party demonstrates that there are no genuine issues of material fact and that she is entitled to a judgment as a matter of law. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). "The summary judgment process is designed to provide a quick, inexpensive means of concluding cases," but is not intended to "substitute for the trial of genuine and material factual matters." *Id*. To determine whether a genuine issue of material fact exists, the trial court must take the strongest view of the evidence favoring the non-moving party, draw all reasonable inferences in favor of that party, and discard countervailing evidence. *Id.* at 210-11.

On appeal, this Court reviews the grant of summary judgment as a question of law. *Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). Consequently, we review the record *de novo*, with no presumption of correctness as to the trial court's findings of fact or conclusions of law. *Id*. (citing *Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 197-98 (Tenn. 2000)). Moreover, the interpretation of a contract is a question of law, not a question of fact. *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Doe*, 46 S.W.3d at 196 (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983)). Therefore, we review the trial court's interpretation of the contract *de novo*, without a presumption of correctness. *Guiliano*, 995 S.W.2d at 95.

In the instant case, the trial court held that there were no issues of material fact. We agree. Essentially, neither party disputed the contents of Barton's letter to Levine, or that Barton made numerous gifts to Levine between 1993 and 2003, or that Barton stated that he would take care of Levine. Reviewing the record in this case in a light most favorable to Levine and drawing all reasonable inferences in her favor, we must conclude that there were no genuine issues of material fact.

We look now at whether the Estate was entitled to relief as a matter of law. *Byrd*, 847 S.W.2d at 210. Consequently, we must determine whether a legally binding obligation arose from Barton's letter, actions, or statements to Levine. There are two bases for Levine's claim against the Estate: the alleged promise to repay the $250,000 lost in the Arkansas Investment, and Barton's undated letter.

Levine notes that the evidence indicates that Barton made a number of promises to repay Levine for the $250,000 that she lost in the failed Arkansas Investment. She relies on two possible theories for recovery of the $250,000, gift and contract.

To recover under a gift theory, Levine bears the burden of proving that an *inter vivos* gift was made. *Figuers v. Sherrell*, 178 S.W.2d 629, 632 (Tenn. 1944); *Bligh v. Snider (In re Estate of Bligh)*, 30 S.W.3d 319, 321–22 (Tenn. Ct. App. 2000). Essentially, to establish that a gift has been made, the donee must show that the donor intended to make a present gift and that there was delivery

-5-

of the gift. *Figuers*, 178 S.W.2d at 632; *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996). The Tennessee Supreme Court has explained that intent and delivery must be clearly proved, and that "[d]oubts must be resolved against the gift." *Figuers*, 178 S.W.2d at 632.

In the instant case, the trial court ruled that Levine was unable to prove either donative intent or delivery of the alleged gift. We agree. The evidence establishes at most an intent to repay her at some point in the future, and there is no evidence of intent to make a present gift. Moreover, there is absolutely no evidence of delivery. This theory must fail.

Under a contract theory, the trial court held that Levine could not recover, even assuming that there was a valid offer, because of a lack of consideration. We agree. The record is devoid of any evidence of consideration. Consequently, the trial court correctly ruled that Levine was unable to recover under a contract theory.

The second aspect of Levine's claim against Barton's estate is based on Barton's undated letter to her while she was living in California, discussed *supra*, and his subsequent alleged assurances of financial support.

Levine alleges that the letter and Barton's personal assurances, together, created a contract implied in fact. According to Levine, once she moved from California to Memphis, as the letter suggested, Barton became obligated to continue providing for her financial needs.

The trial court addressed this theory: "The issue here is whether [the letter and subsequent financial support] created an obligation on behalf of [Barton] to continue supporting [Levine], even after his death." It noted that it was unclear what consideration existed to support the continued obligation of either party. Additionally, the trial court described Barton's promise to take care of Levine as "ambiguous at best." We agree. By its own terms, Barton's letter lacks the requisite definiteness to give rise to a contractual obligation. The offer to "help[] in some small way" until Levine was "settled comfortably financially" is simply too vague and ambiguous to support an award to Levine of money damages on the basis of contractual liability. *See Cotton v. Roberts' Estate*, 337 S.W.2d 776, 779 (Tenn. Ct. App. 1960) (declaring that a decedent's alleged assurances that she would take care of a claimant were insufficient to create a contractual relationship because the assurances were too "ambiguous, vague, and indefinite" to prove the existence of a contract.). Any award of damages based on Barton's letter would be arbitrary; it would not be based on the terms of any agreement between the parties.

Levine also argues that she is entitled to recover under a promissory estoppel theory. The Tennessee Supreme Court has adopted the following definition of promissory estoppel from the *Restatement of Contracts*, section 90:

> A promise which the promisor should reasonably expect to induce action or
> forbearance of a definite and substantial character on the part of the promisee and

which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

*Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982). The promisee's detrimental reliance on the promise either substitutes for consideration or, quite simply, justifies judicial enforcement of the promise in order to avoid injustice. *Id*. The doctrine has clearly defined limits: (1) the detriment the promisee suffered in reliance must be economically substantial; (2) the detriment to the promisee must have been foreseeable by the promisor; and (3) the promisee must have reasonably relied on the promise. *Id*. (citing *Law of Contracts* § 61 (2d ed. 1965)). Finally, "the promise upon which the promisee relied must be unambiguous and not unenforceably vague." *Calabro v. Calabro*, 15 S.W.3d 873, 879 (Tenn. Ct. App. 1999).

In the instant case, the promise that Levine relied upon — that Barton will "help [] in some small way" until she was "settled comfortably financially" — can only be characterized as "unenforceably vague." *See Id.* Barton's letter is clearly insufficient to create a legal obligation on the part of Barton to continue to care for Levine after his death.

Finally, Levine asserts a theory of partial performance to recover against the Estate for the alleged promises made in Barton's letter to Levine. The trial court explained that this argument was misplaced:

This equitable doctrine exists as an exception to the Statute of Frauds. *See Buice v. Scruggs Equipment Co.*, 250 S.W.2d 44, 48 (Tenn. 1952). The [Estate] argues that any oral promise to guarantee an investment violates the Statute of Frauds. *See* Tenn. Code Ann. § 29-2-101 ('No action shall be brought . . . [t]o charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the promise or agreement, upon which such action shall be brought . . . shall be in writing, and signed by the party to be charged therewith . . ."). The Claimant argues that because the Decedent has continued to provide for the Claimant since she moved to Memphis, he has partially performed on his contract. Therefore, the Claimant argues that this falls into the exception to the Statute of Frauds.

If the Claimant were arguing that the Decedent had partially performed on his promise to reimburse the lost investment money, this might be a persuasive argument. But, because there is no argument on behalf of the Estate that the claim to provide for the Claimant's financial needs violates the Statute of Frauds, there is no need to argue for an exception based on partial performance.

We agree.

The decision of the trial court is affirmed.  Costs of this appeal are taxed to the Appellant Patricia Levine, and her surety, for which execution may issue, if necessary.


_____
HOLLY M. KIRBY, JUDGE