# ABERNATHY et al. v. ADAMS et al.
## 218 S. W. (2d) 747.

Jackson.   April 29, 1948.

Petition for Certiorari denied by Supreme Court, November 9, 1948.

560

M. E. Lee, of Selmer, and P. M. Harbert, of Savannah, for appellants Louis Adams and others.

Ross & Ross, of Savannah, for appellants Will Terry Abernathy and others.

Will Tom Abernathy, of Selmer, and Moss & Benton, of Jackson, for appellees.

SWEPSTON, J.   The several appeals herein arise out of the decree of the Chancellor construing the will of Gen. W. K. Abernathy of Selmer, Tennessee and rendering a money judgment in favor of his estate.

Gen. Abernathy died testate in April, 1940, survived by his widow, Mrs. Lutie Adams Abernathy, and by collateral kin.   He never had any children.

His widow probated his will but survived him only about two years and died intestate, without having taken any formal action in Court.   Mr. Louis Adams, her brother, qualified as her administrator but died *pendente lite*; his widow, Mrs. Rachael Adams, qualified as his administratrix and the cause was revived as to her.

The original bill was filed by Will Tom Abernathy, administrator of General Abernathy's estate, after the death of Mrs. Lutie Abernathy.

It is necessary to set out the entire will for a proper understanding of the questions involved.

"At my death it is my will that my wife, Lutie Abernathy, have and use for the remainder of her life the property I have at my death, with the provisions named herein.

"On this date I have and own:—

*"Real Estate*

"(1) The printing office lot in Selmer, Tennessee, 25 x 100 feet in my own right.

"(2) A one-half undivided interest in the 2 lots adjoining on the north conveyed to me and Terry Abernathy by A. B. Hamm.

"(3) A one-half undivided interest in land south of Selmer in the 6th district, bought by me and Terry Abernathy from Jasper and Reedy McCullar.

"(4) A number of lots in what is called Hillcrest subdivision all the deeds to this being of record in Selmer, Tennessee.

*"Personal Property*

"25 shares of stock in the First National Bank, Selmer, Tennessee.

"5 shares of stock in the Selmer Bank & Trust Company, Selmer, Tennessee.

"5 shares of stock in the Selmer Storage Company, Selmer, Tennessee.

"5 shares of stock in the Southern Cities Utilities Company.

"9 shares ($100 each) Selmer Canning Company.

"23 shares of stock in the Selmer Ice Company.

"Certificate of deposit in the Selmer Bank & Trust Company of about $8100.00.

"Checking account of about $2500 in the Selmer Bank & Trust Company.

"A lot of Books, Law Library, Selmer, Tenn.

"A printing Plant, McNairy County Independent, estimated value $4000.00.

"A lot of coal in stock estimated value $400.00.

"A lot of coal accounts estimated $600.00.

"One note Louis Adams, Jr. $750.00.

"Other notes in note book at our home.

"It is my desire that my wife take charge of all of the property and use it and handle it her lifetime.

"I further desire that she pay to my brother J. W. Abernathy $25.00 a month for at least two years, and to make such other contributions to him as she may deem proper, and as she thinks I would contribute, after paying the monthly sums, she may increase these monthly sums if she thinks necessary, so that the total may be $600.00.

"It is my further desire that my brother, C. S. Abernathy and J. W. Abernathy, have the use and benefit of the McNairy County Independent outfit, using the building and outfit free from any rent or other charge, the revenue from the outfit to be divided equally between them, in the event the office is not operated, then my wife will sell or lease the outfit, and if sold divide the proceeds of sale, equally among my brothers, O. S., J. W. and Grady Abernathy. To defray the expenses of the outfit for a year, I desire that my wife pay the sum of $600.00 the sum to be used in paying bills for necessary stock to keep the Newspaper and job department supplied, and to be used only in paying accounts for such, necessary stock. I further desire that my wife give to Will Tom and Terry Abernathy, my nephews, $500.00

each to be used in defraying expenses in College. I further desire that my wife give to little Rachel, Nora Mills and Julia Pearl Abernathy, each $200.00 as she may see proper to give, I mean as to time, and in amounts.

"I further desire that my wife take care of the note for Grady Abernathy, at the First National Bank I being surety on that note for him. My sisters except Pearl are in good circumstances, and I therefore make no provision for them except to Pearl, to whom I give $200.00 and desire my wife to pay her that amount, she already having received from me, various sums from time to time.

"*No bond is required of my wife and she is to make no report or settlement.*

"I leave it all to her judgment, conscious that my every desire as she understands them will be carried out.

"I have $2500.00 Life insurance in the Union Central Insurance Company, payable to my wife.

"I have an automobile, and many articles of personal property, guns and the like, my wife may dispose of all of such as she desires, to include all of my property not herein listed.

"*At her death the remainder of my property shall go to my brother O. S., J. W. and Grady or the descendants and to the children of my deceased brother, Terry Abernathy, these children to take what would have been their fathers share, and to Matthew Bigger my nephew, he to take what would have been his mothers share in my estate had I died without making a will.*

"*In any matter where any controversy may arise, the action and judgment of my wife will prevail.*

"I am signing the above in my office in Selmer, Tennessee at 10:30 A.M. September 30, 1930.

"W. K. Abernathy."

The Chancellor held, among other things, that:

(1) Certain unlisted personal property mentioned in the fourth paragraph from the end of the will such as an automobile, guns, etc., was bequeathed to the widow absolutely in fee;

(2) The proceeds of the Union Central Life Policy payable to the widow never became a part of the testator's estate and belonged to the widow absolutely;

(3) That all other property real and personal was bequeathed and devised to the widow for her use during her lifetime with the right to encroach upon the corpus for her support and maintenance, with remainder to those designated by the will in the third paragraph from the end.

(4) But that the proceeds from the sale of the printing outfit made after the death of the widow belonged to the three brothers of testator or their heirs only and to the exclusion of the heirs of the other brother, Terry, and of Matthew W. Bigger, a son of testator's sister.

(5) The estate of Mrs. Lutie Abernathy was liable for $3750.00, the amount of a time deposit certificate, as the Chancellor held, belonging to the Estate of Gen. Abernathy and for $1674.06, the amount realized by the widow from the sale after the death of Gen. Abernathy of the stock in the Selmer Ice Co. Judgment for the total in the sum of $5454.06 was rendered against Mrs. Louis (Rachael) Adams, Administratrix, her sureties and the sureties of Louis Adams, the deceased administrator of the Estate of Mrs. Lutie Abernathy.

Mrs. Rachael Adams, administratrix, and her sureties have appealed and by their assignments of error which need not be stated verbatim challenge the correctness of (3), (4) and (5), supra, of the Chancellor's action; the overruling of their demurrer to the bill for the same

reasons; the failure of the Court to hold that the burden of proof was on complainants to prove the amount of debts of Gen. Abernathy paid by his widow; and the taxation of all costs, except those incident to the sale of the real estate against defendants.

The heirs and distributees of Terry Abernathy, deceased, and Matthew W. Bigger appeal only as to (4) supra, of the decree, by which they were denied any interest in the proceeds of sale of the printing outfit. Their two assignments of error will be discussed later.

Appellant, Mrs. Adams, and her sureties disavow any claim to the real estate.

Their claim is that the will gave Mrs. Abernathy all of the personal property absolutely in fee because (1) they say, she had unlimited power of disposition, which converted the estate of the first taker into a fee and (2) there was no gift over of the personal property by the third paragraph from the end of the will; this latter reason will be discussed later.

Counsel have cited numerous Tennessee cases holding that where an unlimited power of disposition is given the first taker a limitation over is void and the fee vests in the first taker.

We do not deem it necessary to discuss those cases, because the situation is now controlled by statute, 1932 Code, Section 7603, repeated in Section 8093, reading as follows:

"First taker's unexercised power of disposition, effect of.—When the unlimited power of disposition, qualified or unqualified, not accompanied by any trust, is given expressly, in any written instrument, to the owner of any particular estate for life or years, legal or equitable, such estate is changed into a fee absolute as to right of

disposition and rights of creditors and purchasers, but subject to any future estate limited thereon or executory devise thereof, in event and so far as the power is not executed or the property sold for the satisfaction of debts during the continuance of the particular estate.''

■ The latest case we are aware of is Redman v. Evans, 184 Tenn. 404, 199 S. W. (2d) 115. So that now the limitation over is not void but takes effect upon whatever property remains undisposed of at the death of the first taker.

Mrs. Abernathy was given only a life estate by the express language of the will, so that whatever of her husband's estate remained undisposed of by her at her death would pass as the ''remainder'' to the complainants, unless appellant's second reason is sound. The argument by appellants is that the expression in the remainder clause ''. . . these children to take what would have been their father's share, and to Matthew Bigger, my nephew, he to take what would have been his mother's share in my estate had I died without making a will'' shows that only realty was intended, because in case of intestacy of Gen. Abernathy his widow would have received all of the personalty, there being no children.

■ The first defect in this theory is that the quoted expression applies only to the children of the deceased brother, Terry, and to Matthew Bigger, the sister's child. It has no application to the three brothers, O. S., J. W. and Grady or their ''descendants''. This we believe splits the premise of the theory. The testator could not have meant that the one group would take the remaining personalty and realty, while the other took only realty.

■ Again, the only distinction made in the entire will as to the two kinds of property concerning the widow is

in the next preceding paragraph wherein certain unlisted personalty and personal effects are given to her in fee. Other than this, there was clearly a limitation over of all property remaining at the death of the first taker.

The expression was an inadvertence; the evidence thought uppermost in the testator's mind was to divide all the remaining property equally among the five groups *per stirpes.*

We do not think it necessary to decide whether Mrs. Abernathy had unlimited power of disposition, because the statute above quoted would control either way; furthermore, the appellees do not question any disposition of property made by her, but simply seek to obtain what remained at her death.

Nor do we see any significance in the fact that she was relieved of the necessity of filing inventory, giving bond, or making settlement with the Court, as it might bear on the question of whether she took the fee, because it is perfectly plain on the face of the will that only a life estate was given and that the statute converts it into a fee in any event only if she actually disposes of the property, but otherwise as to the part she fails to dispose of, as to which the limitation over takes effect.

Cannon v. Cannon, 182 Tenn. 1, 184 S. W. (2d) 35, is not in point.

The will on its face appeared to give the widow the estate "until her death" but the Court construed it to vest the fee, because the couple had no children, the estate was small, and no one else was mentioned in the will. Since there was not in terms a disposition of the property after the death of the widow and no gift over, the Statute above referred to was not applicable and was not referred to in the opinion.

We, therefore, affirm the action of the Chancellor and overrule all assignments of error on this phase of the cause.

We affirm also the action of the Chancellor in overruling the demurrer.

If, therefore, Mrs. Abernathy took a life estate in all of the property real and personal except those items above mentioned which went to her in fee, the next assignments we need consider for this group of appellants are those directed at the judgment for the two items, the proceeds of the bank time deposits and of the sale of the Selmer Ice Company stock.

This requires a consideration of the evidence.

It appears that the relationship between this couple was that of the normal husband and wife and his will is indicative of his regard for her welfare.

She had an annual income for about 14 years prior to his death of about $1000.00 rentals, to the collection of which she personally attended.

Each had one bank account and both were at the Selmer Bank & Trust Co. There was an understanding at the bank that all checks drawn on her account whether her name was signed by the one or the other would be honored. He did sign her name to many checks and to time deposit certificates in her name.

We are now discussing the ownership of the time deposit funds.

At the date of execution of his will in 1930 General Abernathy had on time certificate in his name about $8100.00. This was repeatedly renewed and reduced to $3500.00 on September 24, 1934. On March 24, 1935 he surrendered this certificate and one belonging to her in the sum of $912.00 and took a renewal in *her name* for

$4000.00, he endorsing her name on said certificate being surrendered.

September 25, 1935, he reduced this to $3750.00. Later he reduced it to $3700.00.

October 4, 1937 it was increased to $4000.00 by the interest of $46.75 and a check for $253.25 drawn on her account by him. April 8, 1938 it was increased to $4050.00 by the addition of the earned interest on the fund. It was twice renewed in the sum of $4050.00 without deposit of the earned interest.

On November 13, 1939 it was increased to $5000.00 by the addition of a certificate for $506.25 belonging to her and a check on her account for $398.19 drawn by him plus $5.56 from some source not shown.

All of the foregoing were handled by him without her being present but obviously with her knowledge and consent.

After General Abernathy died in April 1940, his widow on May 13, 1940 reduced the certificate to $4000.00 and deposited $1040.00 in her checking account. February 4, 1941 she deposited $4040.00 to checking account.

February 26, 1941 she issued a check for $5000.00 in the purchase of an annuity contract with John Hancock Life Insurance Company, on which at her death the unconsumed value of $4703.60 was paid to her estate.

There is no evidence in the record of any statement made by either of them during his life as to his intention to make a present gift to her of his interest in this fluctuating fund, nor of any act showing that he surrendered unfettered dominion and control of the certificate to her; the evidence points in the other direction, because he handled it for his own benefit on more than one occasion after having the first of the successive certificates issued in her name.

The question, therefore, is, was there a completed gift *inter vivos* of his interest in the fund?

█ In the light of our Tennessee cases we think there was not.

In Figuers v. Sherrell, 181 Tenn. 87, 178 S. W. (2d) 629, 632, 152 A. L. R. 420, the subject of the alleged gift was certificates of corporate stock made out in the name of a nephew to whom the alleged donor did not stand *in loco parentis*. The evidence showed the intention and acts of the donor to retain control. Held, not a gift.

The Court said:

"The Court of Appeals has very well stated the substance of the decisions in this State with reference to gifts as follows:

" 'Intention to give and delivery of the subject of the gift must clearly appear. Doubts must be resolved against the gift. There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. The burden of proving that a gift was made is upon the donee.'

"See Chandler v. Roddy, 163 Tenn. 338, 43 S. W. (2d) 397, collecting and reviewing the decisions of this Court."

In the Roddy case, the daughter was given access to the box where the securities were kept. Certain stocks which had been endorsed to her were held to be a completed gift. Certificates of deposit in bank which had not been endorsed to her were held not to be a gift. Thus is illustrated the necessity for the concurrence of the two elements (1) the intention to give and (2) the delivery of unfettered dominion and control.

See also, Shugart v. Shugart [111 Tenn. 179, 76 S. W. 821, 102 Am. St. Rep. 777], cited in the Roddy case.

The next question is the amount of Gen. Abernathy's interest in the fund.

We think that when on March 24, 1935 he first took the certificate in her name and used $912.00 of her funds, that presumably all of this went into the new certificate in her name.

There is not the slightest intimation that General Abernathy was guilty of any improper conduct in the way he handled these transactions. It is purely a question of what should be the equitable solution of this problem now that their voices are stilled and they have passed into the great beyond leaving us no expression of their intention in this regard.

■ While it is obvious that he was at liberty to use such of her funds as he desired, it is hardly to be presumed that he would use them when he was in funds of his own. When he commingled the two funds, any withdrawals by him should be presumed *prima facie* to be from his part of the whole.

On this basis his interest in the fund on March 24, 1935 was $3088.00 or the difference between $4000.00 and $912.00. Later the fund reached the low point of $3700.00 or $300.00 less than the original. This reduced his interest in it to $2788.00, except for an adjustment of interest which we cannot make as the record stands but may be done on a remand for further proceedings or by agreement of the parties.

All additions to the fund after the certificate was held in her name were made with her funds except when in some instances his part of the earned interest was added to it.

His part of the fund has been definitely traced into the annuity, so that his estate is entitled a judgment for the amount found as here modified.

We, therefore, sustain these assignments to the extent just indicated.

The other item making up the judgment complained of is the proceeds from the Ice Company stock. Gen. Abernathy owned 25 shares of the Selmer Ice Company. After his death this company was sold to the Crystal Ice Company for $9000.00, of which $1000.00 was cash and balance in notes. Mrs. Abernathy collected and used all but $1674.06, which was paid to her administrator.

We think the Chancellor correctly rendered judgment for this amount.

Another assignment of error complains of the failure of the Chancellor to hold that the burden of proof was on complainants to prove the amount of debts of General Abernathy that were paid by his widow.

In the light of the construction of the will by the Chancellor and by what we have said above, we do not think this question is material.

Not only was the widow given the right to encroach upon the corpus for her support and maintenance but she was directed by the will to pay substantial legacies, some monthly and others from time to time and to pay a note of Grady Abernathy; all of this in addition to any of his debts for which his estate would be liable. It is unlikely that she could have accomplished all this out of income only.

Also, the complainants do not question her actions in respect to such expenditures, but only seek to recover what remained of the testator's estate after the death of the widow.

This assignment is overruled.

The only other matter relates to taxation against appellants of all costs except those incident to the sale of the real estate.

574

■ This litigation was due to the attitude of appellants in claiming the fee in all of the personalty. We see no abuse of the discretion vested in the Chancellor to tax the costs.

We now consider the limited appeal of part of the original complainants involving the proceeds of the sale of the printing outfit.

As heretofore stated, the Chancellor construed this clause of the will to bequeath the proceeds of sale to the three brothers named therein to the exclusion of appellants.

The two assignments of error are cast upon the idea (1) that the widow of testator did not exercise the power of sale given by the will, so that this property passed under the residuary clause to the five groups of heirs, and (2) that no life estate was vested in the widow but only a power of sale, which not having been exercised, passed this personalty into the residuary clause.

O. S. and J. W. Abernathy died before the testator.

As we read this clause the testator made provision to this effect:

O. S. and J. W. Abernathy are to have the use of the printing outfit and of the building free, if they operate it and if they operate it, I give them $600.00 to defray expenses. If they do not operate it, then if my wife sees fit to lease it, they will receive the benefit of the rents; if my wife sees fit not to lease it but thinks it better to sell it, then the proceeds will be paid to the two brothers and to a third, Grady.

■ It seems clear that no estate whatsoever was vested in the widow, but only the power of sale or lease, if the two of them did not operate it.

It seems equally clear that while the widow was directed either to sell it or lease it, if not operated, yet the choice was left entirely to her judgment and discretion.

Grady could not have demanded a sale, nor could the other two have resisted a sale, if the latter failed to operate it.

The last paragraph of the will provides: "In any matter where any controversy may arise, the action and judgment of my wife will prevail."

Since the widow did lease it and did not sell it, the revenue was the only benefit available to anybody; the three of them never became entitled to the proceeds of sale under the clear language of the will.

Therefore, at her death the power of sale or lease expired, not being coupled with an interest; these brothers or their representatives along with the appellants came into enjoyment of the entire remainder of the testator's estate, so that there was no longer any reason for preferential treatment of the three, whatever may have been the testator's reason for same during the life of the widow; and this personalty freed from the trust passed under the residuary clause to the five groups in equal shares.

We, therefore, sustain the assignments of this group of appellants.

Except as modified the decree of the Chancellor is affirmed.

A judgment will be entered here against Mrs. Rachael Adams, Administratrix, and her sureties for $4462.06, with interest from August 25, 1947, and all costs of this appeal.

The costs incident to the limited appeal of Will Terry Abernathy, et al. will be paid by the Estate of General Abernathy.

Baptist, P. J., concurs.

Adams, Sp. J., not participating.