IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 4, 2017

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

Appeal from the Circuit Court for Sumner County
No. 83CC1-2014-CV-393    Joe Thompson, Judge

_____

### No. M2016-01765-COA-R3-CV

_____

This appeal arises from a divorce action following a four-year marriage. The issues pertain to the trial court's classification of the wife's business as her separate property, the valuation and division of the marital property, and its rulings on the husband's numerous pretrial motions for civil contempt, pendente lite support, and recusal of the trial judge. The trial court denied all of the husband's motions and ordered the husband to pay the attorney's fees that the wife incurred in defending certain repetitious motions. After a two-day trial, the court declared the parties divorced, classified their property as separate or marital, and valued and divided the marital property. One of the marital assets was a patent application that had been denied, which the court valued at $0.00 and awarded to the wife. The husband raises eleven issues on appeal. We reverse the award to the wife of the attorney's fees she incurred in defending the husband's numerous pretrial motions. We affirm the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part**

FRANK G. CLEMENT JR., P.J., M.S. delivered the opinion of the Court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

John Anthony Gentry, Goodlettsville, Tennessee, Pro Se.

Pamela A. Taylor and Brenton H. Lankford, Nashville, Tennessee, for the appellee, Katherine Wise Gentry.

### OPINION

Katherine Wise Gentry ("Wife") and John Anthony Gentry ("Husband") married on September 5, 2009, and had no children together. Prior to the marriage, Wife owned and operated a cake-baking business called SweetWise, Inc. ("SweetWise") and Husband

worked as an accountant for Century Pool Company. When Husband lost his job shortly before the marriage, Wife hired Husband to work for SweetWise. Two years after the parties married, Wife submitted a patent application for a food-safe vinyl fondant mat, and then, Wife amended the application to include Husband as a co-inventor. During the course of the litigation, the parties received a final rejection of the patent application from the United States Patent Office.

At the end of 2013, the parties' marriage began to deteriorate, and Wife filed for divorce on April 9, 2014. Husband then filed an answer and a counter-complaint for divorce. Wife subsequently filed an amended complaint to which Husband did not respond.

Approximately one month later, the parties discussed a possible reconciliation. To show her good faith, and at the insistence of Husband, Wife executed a stock certificate purporting to transfer forty-five percent of SweetWise to Husband. She claims that she signed the front of the certificate but never gave it to Husband, and instead, stored it in a box located in a storage unit that was inaccessible to him. The couple's attempt at reconciliation failed, and Wife destroyed the stock certificate. All the while, Husband continued to work for Wife at SweetWise despite the growing tension between them.

On October 22, 2014, Husband filed a contempt petition against Wife, alleging that Wife violated the statutory injunction, Tenn. Code Ann. § 36-4-106(d), by, *inter alia*, cancelling his business debit card, removing him from all bank accounts, and withdrawing more money than necessary from the business account to pay Wife's salary. Approximately one week later, Husband filed an amended petition, asking for pendente lite support in the alternative. In December 2014, Wife terminated Husband's employment.

At the civil contempt hearing on March 10, 2015, Wife denied that she violated the injunction, claiming that she was the sole owner of SweetWise and that Husband was no longer an employee of the business. At the close of Husband's proof, Wife moved for a "directed verdict." The court granted Wife's motion in its oral ruling, stating it "could not find [Wife's] conduct willful when there was no bright-line distinction as far as how the parties operated with respect to their personal finances and their business finances."

The court entered an order on March 19, 2015, dismissing Husband's motion for civil contempt and ordering the parties to submit expense statements so the court could rule on Husband's request for pendente lite support. The parties submitted their expense statements and their responses to those statements. The court then held a hearing on Husband's request for pendente lite support on July 1, 2015, and in an order entered on July 13, the court denied Husband's request.

Shortly following, Husband filed a Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the Alternative to Reconvene Hearing for Petition for Contempt. Husband alleged that during the contempt hearing, while cross-examining Husband, Wife's counsel suggested that Wife possessed an email that would prove Husband was lying when he testified about the patent application. Wife's counsel never produced the email, and Husband claimed the suggestion by counsel that such an email existed, biased the judge against Husband and warranted the judge's recusal or a mistrial. Husband argued that the judge's resulting bias against Husband was evidenced by the judge's numerous adverse rulings. The same day Husband filed the recusal motion, Husband also filed a Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the Alternative Set Trial Date to Substantiate Husband's Claim of Stock Ownership.

Following a hearing, the court entered an order denying Husband's motions and ordering Husband to pay Wife's attorney's fees and expenses rendered in connection with Wife's opposition to Husband's motions. Husband then filed a Second Motion to Reconvene Hearing for Petition for Contempt. The court held a hearing on September 15, 2015, where it denied Husband's motion and, again, ordered Husband to pay Wife's attorney's fees and expenses incurred in opposing that motion.

The court held a final hearing on May 2 and 3, 2016. The primary issues were who should be awarded the divorce and whether the business, SweetWise, and a patent application were Wife's separate property. Following a trial, the court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129(b).

With regard to property, the court ruled that SweetWise was Wife's separate property because she started the business prior to the marriage, she was listed as the sole owner at all times during the marriage, and there was no evidence of an implied partnership between the parties. As for Husband's contention that Wife gifted forty-five percent of the shares of stock in the business to him by signing a stock transfer certificate, the court found that Wife never completed the gift because she did not deliver the executed stock certificate to Husband. With regard to Husband's alternative claim that he made substantial contributions to the business that caused it to increase in value, the court found that Husband failed to carry his burden of proof. The court classified the patent application, which had been denied by the United States Patent Office, as marital property, valued it at $0.00, and awarded to Wife in the property division.

The court also denied Wife's request for attorney's fees in the form of alimony in solido based on the finding that she had the ability to pay her fees. This appeal followed.

# ANALYSIS

Husband raises eleven issues on appeal.[1] Having assessed the issues as framed by Husband in the context of Husband's arguments, we find it necessary to rephrase some of the issues as follows to enable a more focused analysis:

---

[1] Husband states the issues as follows:

    I.    Whether the Circuit Court Judge failed to properly recuse and should the Circuit Court Judge have recused?

    II.    Whether the Circuit Court Judge errored in denying to order Appellee/Plaintiff/Counter-Defendant (hereafter referred to as Wife) to file a quit claim on the marital residence awarded to Husband.

    III.    Whether the Circuit Court Judge errored in not ordering partner compensation or Pendente Lite Support during pendency of proceedings and should the court have reconvened on that matter.

    IV.    Whether the Circuit Court Judge errored in awarding attorney fees to Wife.

    V.    Whether the Circuit Court Judge errored in not stating in writing, the court's findings of fact and conclusions of law requested by Husband pertaining to specified rulings.

    VI.    Whether the Circuit Court Judge errored in issuing a ruling without hearing testimony and refusing to view evidence regarding Husband's Motion to Sanction pursuant to Rule 34A.02 and Rule 37 for destruction of evidence and failure to comply with discovery?

    VII.    Whether the Circuit Court Judge errored in relying on Wife's perjurious testimony and in the Circuit Court Judge not sanctioning Wife for perjury?

    VIII.    Whether the Circuit Court Judge errored in signing an order against his instructions with no doubt that the order did not reflect the Circuit Court Judge's deliberations and were in direct contradiction to the Court's intent?

    IX.    Whether the Circuit Court Judge errored in ignoring and not applying the Doctrine of Commingling which would convert the business into marital property, and whether the Circuit Court Judge errored in ignoring Wife's destruction of Husband's stock certificate.

    X.    Whether the Circuit Court Judge errored in equitably distributing marital assets and errored in valuing the patent application at $0.00 and errored in not ruling on the underlying product and whether the court errored in determining the patent was "transmuted" into marital property.

    XI.    Whether the Circuit Court Judge errored in quashing "any and all subpoenas."

I.      Whether the trial judge failed to properly recuse himself.

II.     Whether the trial court erred by awarding attorneys' fees to Wife in opposing Husband's pretrial motions.

III.    Whether the trial court erred in classifying SweetWise as Wife's separate property.

IV.     Whether the trial court erred by valuing the patent application at $0.00 and awarding it to Wife in the property division.

After analyzing the above issues at length, we will summarily rule on the remaining seven issues.

## I.      FAILURE TO RECUSE

Appellate courts review a trial court's decision on a recusal motion de novo, with no presumption of correctness accorded to the trial court. Tenn. Sup. Ct. R. 10B, § 2.01.

"[O]ne of the core tenets of our jurisprudence is that litigants have a right to have their cases heard by fair and impartial judges." *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn. 2001). Accordingly, at all times judges must conduct themselves "in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary…." Tenn. R. Sup. Ct. 10, RJC 1.2. Judges are required to recuse themselves from any proceeding "in which [their] impartiality might reasonably be questioned…." Tenn. R. Sup. Ct. 10; RJC 2.11(A). This is so even when no party has filed a motion for recusal. Tenn. R. Sup. Ct. 10, RJC 2.11, cmt. 2.

Tennessee Supreme Court Rule 10B requires a party seeking recusal or disqualification of a judge to "do so by a timely filed written motion…***supported by an affidavit***." Tenn. Sup Ct. R. 10B, § 1.01 (emphasis added). "The motion shall state, with specificity, all factual and legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose." *Id*. Once the litigant has filed a motion in accordance with § 1.01, the judge shall promptly grant or deny the motion through a written order. Tenn. Sup. Ct. R. 10B, § 1.03.

Here, Husband's motion seeking Judge Thompson's recusal is deficient because it lacks the required affidavit. As such, the record is "insufficient to support a finding of error on the part of the trial court." *Childress v. United Parcel Service, Inc.*, No. W2016-00688-COA-T10B-CV, 2016 WL 3226316, at *3 (Tenn. Ct. App. June 3, 2016). Accordingly, the trial court's decision to deny the motion for recusal can be affirmed on this ground alone. *See id.*

Notwithstanding this fatal deficiency, we have reviewed the record to determine whether the adverse rulings of which Husband vociferously complains require recusal. "A trial judge's adverse rulings are not usually sufficient to establish bias." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008). Even rulings that are "erroneous, numerous and continuous, do not, without more, justify disqualification." *Id.* (quoting *Alley v. State*, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). There is good reason for this proposition: "If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon." *Davis*, 38 S.W.3d at 565.

Thus, the contention that the trial judge should have granted the motion for recusal because his rulings would prompt an objective observer to have a reasonable basis for questioning his impartiality, without more, fails as a matter of law. *See Cannon*, 254 S.W.3d at 308; *Davis*, 38 S.W.3d at 565; *Alley*, 882 S.W.2d at 821. Nevertheless, Husband asserts that the factual and legal errors in the rulings are so egregious that a reasonable person would question the judge's impartiality.

In rare situations, the cumulative effect of the "'repeated misapplication of fundamental, rudimentary legal principles that favor[] [one party] substantively and procedurally' can be the basis for recusal." *Krohn v. Krohn*, No. M2015-01280-COA-R10B-CV, 2015 WL 5772549, at *7 (Tenn. Ct. App. Sept. 22, 2015) (quoting *Hoalcraft v. Smithson*, No. M2000-01347-COA-R10-CV, 2001 WL 775602, at *16-17 (Tenn. Ct. App. July 10, 2001)). Therefore, we may examine the challenged rulings to determine whether they contain a "misapplication of fundamental, rudimentary legal principles." *Id*. However, we may not rule on the merits of any order other than the order denying the motion to recuse. *See Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012).

Having reviewed the rulings at issue to determine whether they are so egregious that they create the appearance of bias, we have determined that they do not contain errors that rise to the level of "repeated misapplication[s] of fundamental, rudimentary legal principles...." *Krohn*, 2015 WL 5772549, at *7 (quoting *Hoalcraft*, 2001 WL 775602, at *16). We have also determined that these rulings do not create the appearance of bias against Husband.

Accordingly, we affirm the trial court's decision to deny the motion for recusal.

## II.   ATTORNEY'S FEES AS SANCTIONS

Husband argues the trial court erred by awarding Wife the attorney's fees she incurred in connection with the following three motions filed by Husband: (1) Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the Alternative to Reconvene Hearing for Petition for

Contempt; (2) Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the Alternative Set Trial Date to Substantiate Husband's Claim of Stock Ownership; and (3) Second Motion to Reconvene Hearing for Petition for Contempt.

The trial court did not state a legal basis for assessing attorney's fees as a sanction against Husband in either of its written orders. However, at the hearing on Husband's Second Motion to Reconvene Hearing for Petition for Contempt, the trial court stated to Husband, "You were assessed attorney's fees as a sanction for the motions that you filed."

Tenn. R. Civ. P. 11 governs the imposition of sanctions for pleadings and motions. Generally stated, Rule 11.02 authorizes the trial court to impose sanctions if the required notice is given to the offending attorney and/or party and that attorney and/or party fails to remedy any pending violation of Rule 11.[2] The rule provides two means for initiating sanctions for violating Tenn. R. Civ. P. 11. One of those means is upon motion of a party; the other is on the court's initiative. Tenn. R. Civ. P. 11.03. Here, the court initiated the sanctions imposed on Husband. The means for imposing sanctions on the court's initiative is as follows:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the

---

[2] Tenn. R. Civ. P. 11.02 provides:

By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, −

    (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
    (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
    (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    (4) the denial of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.

(1) How Initiated.

.   .   .

(b)   On Court's Initiative. ***On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision 11.02 and directing an attorney, law firm, or party to show cause why it has not violated subdivision 11.02 with respect thereto***.

(2) Nature of Sanctions; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (a) and (b), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

.   .   .

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Tenn. R. Civ. P. 11.03(1) – (3) (emphasis added).

The record before us does not contain an order as Rule 11.03(1)(b) requires, where the court describes "the specific conduct that appears to violate subdivision 11.02" and directs Husband "to show cause why [he] has not violated subdivision 11.02 with respect thereto." However, the record does include two orders imposing monetary sanctions. On September 9, 2015, the court entered an order stating, in pertinent part:

It is further ORDERED, ADJUDGED AND DECREED that Husband shall pay Wife the sum of $4,134.21 for attorney's fees and expenses rendered in connection with Wife being required to defend Husband's Motion to Request the Honorable Judge Thompson to Recuse Himself and to Declare a Mistrial of Petition for Contempt Hearing or in the alternative to Reconvene Hearing for Petition for Contempt and Husband's Motion to Compel Wife to Return Husband's Stock Certificate & Set Equal Distribution of Business Income or in the alternative Set Trial Date to

- 8 -

Substantiate Husband's Claim of Stock Ownership. Husband shall pay Wife the subject attorney's fees within fifteen (15) days of the entry of this Order.

On October 7, 2015, the court entered an order stating in pertinent part:

It is further ORDERED, ADJUDGED AND DECREED that Husband shall pay Wife the sum of $1,907.50 for attorney's fees and expenses rendered in connection with Wife being required to defend Husband's Second Motion to Reconvene Hearing for Petition for Contempt. Husband shall pay Wife the subject attorney's fees within fifteen (15) days of the entry of this Order, Wife shall be, and is hereby, awarded a judgment against Husband upon which execution may issue.

Although Tenn. R. Civ. P. 11.03(3) states that "[w]hen imposing sanctions, the court **shall** describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed," neither of the orders imposing sanctions do so. (Emphasis added). Thus, both orders imposing sanctions in the form of attorney's fees fail to comply with the mandate in Rule 11.03(3). *See McGahey v. McGahey*, No. W2003-01051-COA-R3-CV, 2003 WL 22272350, at *6 (Tenn. Ct. App. Oct. 1, 2003). Moreover, as noted earlier, the record does not contain a show cause order, as Rule 11.03(1)(b) requires, which is a predicate to the court imposing a sanction on its own initiative.

Because the trial court failed to comply with the mandatory provisions in Tenn. R. Civ. P. 11.03(1) and (3), we reverse the award of attorney's fees as a sanction upon Husband for filing the motions.

### III. SWEETWISE

While conceding the business, SweetWise, was Wife's separate property at the time of the marriage, Husband contends the trial court erred by classifying the business as Wife's separate property. Husband bases his claim on alternative theories. First, he argues that the business is marital property because Wife gifted forty-five percent of the interest to him when she executed a stock transfer certificate. Second, he contends that SweetWise transmuted into marital property as a consequence of the commingling of assets during the marriage. Finally, Husband argues that he made substantial contributions to the business causing it to increase in value; therefore, the increase in value should be classified as marital property.

Tennessee is a "dual property" state. Therefore, the division of the parties' marital estate begins with the classification of the property as separate or marital property. Property classification is a question of fact, which we review de novo with a presumption

of correctness accorded to the trial court. Tenn. R. App. P. 13(d); *Mitts v. Mitts*, 39 S.W.3d 142, 144-45 (Tenn. Ct. App. 2000).

Tennessee defines "separate property" as "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b). "Marital property" is defined as

> all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing date.

*Id*.

### A. GIFT OF SHARES OF STOCK IN SWEETWISE

Husband asserts that SweetWise, which was Wife's separate property at the time of the marriage, became marital property because Wife made a gift of forty-five percent of the outstanding shares to him during the marriage. The court found that Husband failed to establish that Wife gifted any shares of stock in SweetWise to Husband because he could not prove that the stock certificate was delivered. We agree.

In Tennessee, an inter vivos gift is complete when the donor, possessing the present intent to make a gift, delivers the subject of the gift to the donee such that the donor has surrendered dominion and control over the property. *Hansel v. Hansel*, 939 S.W.2d 110, 112 (Tenn. Ct. App. 1996).

Wife testified that after she filed for divorce, Husband told her he would attend marital counseling with her if she transferred forty-five percent of the stock in Sweet Wise to him. Wife testified:

> A. Before I signed his [stock certificate], I put the pen back down and I said to him from the other room, I was like, Are you sure if I sign this you're not just trying to trick me, that you're just not going to run off with the company if I sign it. He was like, No, sweetheart or dear, something endearing just to—I'm absolutely committed to this. I'm going to do this. I was like, Okay. So I signed the certificate….

> .   .   .

> Q. Did you ever hand [Husband] that stock certificate?
> A. No.

- 10 -

Q. Did he ever have it in his hand?
A. No.
Q. Now, you said you signed the stock certificate. Did you sign the back?
A. I only signed the front.
Q. Did you sign the ledger in the book?
A. I did not.
Q. So at that point, the stock certificate is in the boxes. What happened to the stock certificate after that?
A. You know, our day was fine. He was upbeat. I was upbeat. I finished packing a few things. Just because we had this little reconciliation going on, I let him know I'm cautiously optimistic about this….So I took that box and took it over to storage so it wasn't in the way of the front door.
Q. What box?
A. The box of books that I had put the—that I was moving off the bookshelf that I was moving into the storage unit. The stock certificate was in that box of books.
Q. The signed stock certificate was in that box of books?
A. Yes.
Q. When did you move that box of books to the storage room?
A. Within an hour or two of signing them.
Q. Did [Husband] ever hold the stock certificate?
A. Only when he signed it before I did.
Q. Did [Husband] ever hold a signed stock certificate by you?
A. No.
Q. Did [Husband] have access to that storage unit?
A. No.

Husband did not refute Wife's foregoing testimony.

The same issue was discussed at length in *Abernathy v. Adams*, 571, 218 S.W.2d 747, 752 (Tenn. Ct. App. 1948). In that case the issue was whether there was a completed gift inter vivos of an interest in a fund. Upon consideration of the following Tennessee cases, the *Abernathy* court concluded there was not. The court states:

> In *Figuers v. Sherrell*, 181 Tenn. 87, 178 S.W.2d 629, 632, 152 A.L.R. 420, the subject of the alleged gift was certificates of corporate stock made out in the name of a nephew to whom the alleged donor did not stand in loco parentis. The evidence showed the intention and acts of the donor to retain control. Held, not a gift.

The Court said:

- 11 -

'The Court of Appeals has very well stated the substance of the decisions in this State with reference to gifts as follows:

"Intention to give and delivery of the subject of the gift must clearly appear. Doubts must be resolved against the gift. There is no delivery unless the complete dominion and control of the gift is surrendered by the donor and acquired by the donee. The burden of proving that a gift was made is upon the donee.'

'See Chandler v. Roddy, 163 Tenn. 338, 43 S.W.2d 397, collecting and reviewing the decisions of this Court.'

In the Roddy case, the daughter was given access to the box where the securities were kept. Certain stocks which had been endorsed to her were held to be a completed gift. Certificates of deposit in bank which had not been endorsed to her were held not to be a gift. Thus is illustrated the necessity for the concurrence of the two elements (1) the intention to give and (2) the delivery of unfettered dominion and control.

See also, Shugart v. Shugart [111 Tenn. 179, 76 S.W. 821, 102 Am.St.Rep. 777], cited in the Roddy case.

Abernathy, 218 S.W.2d at 752.

Although there are other methods by which securities may be delivered under the Uniform Commercial Code, none of those methods occurred in this case, and it is undisputed that Wife never delivered the stock certificate to Husband. See Tenn. Code Ann. § 47-8-301. Therefore, the gift was never completed. See Hansel, 939 S.W.2d at 112; see also Abernathy, 218 S.W.2d at 752.

For the foregoing reasons, we affirm the trial court's determination that Wife did not gift an interest in SweetWise to Husband.

### B. COMMINGLING AND APPRECIATION

Husband contends the trial court erred "in ignoring and not applying the Doctrine of Commingling which would convert the business into marital property." In the alternative, he claims that the appreciation in the business is marital property.

Tennessee defines "separate property" as "[a]ll real and personal property owned by a spouse before marriage." Tenn. Code Ann. § 36-4-121(b). It is undisputed that Wife

solely owned SweetWise before the marriage; therefore, it was Wife's separate property at the time of the marriage. *See id*.

Through the Doctrine of Commingling, "separate property becomes marital property…if inextricably mingled with marital property or with the separate property of the other spouse." *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002) (quoting Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (2nd ed. 1987)). If separate property appreciates in value during the marriage, the increase in value will be classified as marital property if each party substantially contributed to its appreciation. Tenn. Code Ann. § 36-4-121(b). The burden is on the non-owner spouse to prove that the asset appreciated during the marriage. *Cutsinger v. Cutsinger*, 917 S.W.2d 238, 241 (Tenn. Ct. App. 1995).

The trial court determined that SweetWise remained Wife's separate property based on the following factual findings:

> SweetWise was created by [Wife] in January 2001, approximately eight years prior to the parties' marriage. Initially, it operated as a sole proprietorship specializing in cake making and decorating. In February 2006, [Wife] leased a store front and opened a retail store where she sold cake making supplies and taught classes in cake making, a move which was funded through a capital contribution made by [Wife] prior to the marriage. SweetWise was incorporated approximately two and one-half (2 ½) years prior to the parties' marriage, and [Wife] made a loan to SweetWise in the approximate amount of $8,000.00, prior to the parties' marriage.

> [Husband] was employed by SweetWise from mid-summer 2009 until mid-December 2014. For a short period of time, [Husband's] services were reimbursed with payments on his mortgage in lieu of traditional compensation. In October 2009 [Husband] began receiving paychecks from SweetWise, and he remained a W-2 employee of the company until his termination in 2014. [Wife] was the sole owner of the SweetWise business checking accounts to which [Husband] had signatory privileges only, and [Husband] never personally obligated himself on a loan for SweetWise's benefit.

At the hearing, Wife testified to the foregoing facts, and Husband did not dispute Wife's testimony. Nevertheless, Husband argues that the fondant mats constituted marital property, which the parties sold through SweetWise. He asserts that the commingling of separate and marital property transformed the business into marital property. We disagree with the contention that the fondant mats, as distinguished from the patent application, were marital property. The fondant mats were simply inventory of SweetWise, paid for

solely by SweetWise. Thus, the mats themselves did not constitute marital property; instead, they belonged to SweetWise.

The trial court correctly classified "the patent application" for the fondant mat, which the United States Patent Office denied, as marital property. However, the court did not classify the mats as marital property. Thus, it appears that Husband has confused the patent application, which is an application for the right to exclude others from manufacturing or selling the product, with the product itself. *See Black's Law Dictionary* (10th ed. 2014). Accordingly, the trial court did not err by not applying the Doctrine of Commingling.

The foregoing notwithstanding, even if separate property does not become martial property through commingling, the court may classify the appreciation in a spouse's separate property as marital property if the non-owner spouse proves that the asset increased in value during the marriage due to both spouses' substantial contributions. Tenn. Code Ann. § 36-4-121(b); *Cutsinger*, 917 S.W.2d at 241. Husband testified at length about the substantial contribution he made to SweetWise as an employee but he did not show that SweetWise increased in value as a result. Moreover, it was established that he was compensated as an employee for his services to the company.

There is another reason Husband's claim must fail. "In order to prove such an increase in the value of separate property, a nonowner spouse must present evidence that proves the value of the separate asset prior to the marriage." *Curtsinger*, 917 S.W.2d at 241. Husband failed to present the requisite proof.

## C. PATENT APPLICATION

Husband contends that the trial court erred by valuing the rejected patent application at $0.00 and awarding it to Wife.

The trial court classified the patent application as marital property.[3] Once property has been classified as marital property, the court should place a reasonable value on it. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231(Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn.

---

[3] Husband does not dispute the trial court's ruling that the patent application was marital property; however, he argues that the trial court erred by determining that the patent application became marital property through transmutation. Since Husband agrees with the result, we see no need to conduct an analysis of this issue.

Ct. App. 1997). Decisions regarding the value of marital property are questions of fact, *Kinard*, 986 S.W.2d at 231; thus, we will not second-guess those decisions on appeal unless they are not supported by a preponderance of the evidence. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002).

Once the trial court has valued the marital property, the court is to divide it in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1). The trial court has wide latitude in the division of marital property. *Kinard*, 986 S.W.2d at 230-31. A division of marital property in an equitable manner does not require that the property be divided equally, and it is not a mechanical process; rather, it should be guided by considering the factors in Tenn. Code Ann. § 36-4-121(c). *Id* at 230. Appellate courts defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Id.* at 231.

At the hearing, Wife testified that she and Husband received a final rejection letter from the United States Patent Office dated March 6, 2016, and though she and Husband could appeal the decision, she did not believe the appeal would be successful after consulting with her patent attorney. Husband testified that the product was unique, and for this reason, he believed that an appeal would succeed; however, there is no credible evidence to support that belief or that the patent application has any value. The trial court was free to place a value on the property that fell within the range of evidence submitted, and we find no error with the value assigned by the court.

After its valuation, the court awarded the application to Wife in the property division. The trial court stated, "The basis of this decision is that the invention contained in the patent application was [Wife's] idea, the invention contained in the patent application is a product sold through [Wife's] separate business, SweetWise, this is a short-term marriage, and [Wife] contributed funds towards pursuing the patent during this litigation." The trial court's findings are supported by Wife's testimony, and its conclusion is properly supported by a consideration of the relevant factors in Tenn. Code Ann. § 36-4-121(c), that being (1) the duration of the marriage; (2) the contribution of each party to the acquisition and preservation of the marital asset; and (3) the separate property of the parties. Moreover, the assignment of an asset that has no apparent value is wholly insignificant in this case in light of the value of the marital property the court assigned to Husband, which was more valuable than the marital property assigned to Wife.

Thus, finding no error, we affirm the trial court's decision to award the patent application to Wife.

D. REMAINING ISSUES

As to the remaining seven issues, we find them without merit but will address each one briefly.

First, Husband asks us to consider whether the trial court erred by failing to order Wife to file a quit claim on the marital residence awarded to Husband. We find no error. Moreover, the end result is the same because the final divorce decree, pursuant to which Husband was awarded the marital residence, "has the same force and effect as a conveyance by the party, and shall be registered." Tenn. Code Ann. § 16-1-109. Therefore, there being no meaningful relief for this court to provide Husband, the issue is moot. *See County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996); *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994).

Second, Husband asks us to consider whether the trial court erred by failing to order pendente lite support for Husband. The trial court has broad discretion when deciding whether to order temporary spousal support during the pendency of the litigation. *Brock v. Brock*, 941 S.W.2d 896, 903 (Tenn. Ct. App. 1996). Here, the trial court allowed each party to submit expense statements and held a hearing on the matter. At the hearing, Husband stated that he was a certified public accountant, and as of the time of the hearing, he was employed, though he had experienced a period of unemployment. After considering the arguments of the parties and the expense statements submitted by each, the court determined that Husband did not need spousal support. We agree.

Third, Husband asks us to consider whether the trial court erred by failing to state the court's findings of fact and conclusions of law concerning the dismissal of Husband's motion for civil contempt and the determination that the patent application was marital property. Tenn. R. Civ. P. 52.01 provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law…." The rationale for the rule is to facilitate meaningful appellate review. *Lovlace v. Copley*, 418 S.W.3d 1, 34 (Tenn. 2013). Here, because Husband is not asking us to review the trial court's actual decision to dismiss his motion for civil contempt, there is no meaningful relief for this court to provide Husband. Therefore, this issue is also moot. *See County of Shelby*, 936 S.W.2d at 931. As to the trial court's decision regarding the patent application, we have determined that the trial court made sufficient findings.

Fourth, Husband contends the trial court erred by issuing a ruling without hearing testimony and refusing to view evidence regarding Husband's Motion to Sanction pursuant to Rule 34A.02 and Rule 37 for destruction of evidence and failure to comply with discovery. Husband claimed that Wife should have been sanctioned for destroying the stock certificate, and he also claimed that Wife should be sanctioned for destroying

emails showing that Husband was co-owner of SweetWise. Trial courts have broad discretion to sanction parties for abuse of the discovery process. *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 743 (Tenn. 2015). "Appellate courts should allow discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness." *Id.* The trial court heard Husband's motion for sanctions on May 2, 2016, just prior to the final divorce hearing, and determined that Wife's actions did not warrant sanctions. Finding no abuse of discretion, we affirm.

Fifth, Husband asks us to consider whether the trial court erred in relying on Wife's perjury and by not sanctioning Wife for perjury. A trial court's decision concerning witness credibility is given great weight because the trial court has the opportunity to observe the manner and demeanor of the witnesses during their testimony. *Koch v. Koch*, 874 S.W.2d 571, 574 (Tenn. Ct. App. 1993). Here, the trial court found that Wife had not given perjured testimony. Having thoroughly reviewed the record, we find no error with the trial court's decision.

Sixth, Husband asks us to consider whether the trial court erred in quashing "any and all subpoenas." Tenn. R. Civ. P. 45.07 allows a trial court to quash or modify a subpoena if it is "unreasonable and oppressive." Here, Husband issued numerous subpoenas requesting documents from Wife in a piecemeal fashion. Wife argued that some of the subpoenas were unnecessary and were issued to embarrass Wife, i.e. requesting Wife's plastic surgery records. In an order entered on February 22, 2016, the trial court quashed Husband's subpoenas and ordered the parties to "supplement outstanding discovery, i.e. interrogatories and requests for production of documents, through March 31, 2016 and provide said supplements to the other party by April 11, 2016." As such, the trial court's ruling streamlined the discovery process and did not prevent Husband from obtaining the discovery he needed to prepare his case. Therefore, we affirm.

Finally, Husband contends the trial court erred in signing an order that did not reflect the trial judge's deliberations and was in direct contradiction to the trial court's intent. Specifically, Husband takes issue with the order awarding attorney's fees to Wife as a sanction for Husband's pretrial motions. We see no need to address this issue since we have reversed the trial court's decision to award attorney's fees.

### E.  ATTORNEY'S FEES ON APPEAL

Wife seeks to recover her attorney's fees incurred on appeal. Whether to award attorney's fees incurred on appeal is a matter within the sole discretion of this court. *Shofner v. Shofner,* 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). In determining whether an award for attorney's fees is warranted, we consider, *inter alia*, the ability of the requesting party to pay his or her own attorney's fees, that party's success on appeal, whether that party has acted in good faith, and whether an award of attorney's fees is

equitable. *Id.* Here, we have determined, as the trial court did, that Wife is capable of paying her own attorneys' fees. Thus, her request is respectfully denied.

## IN CONCLUSION

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with two-thirds of the costs of appeal assessed against John Anthony Gentry and one-third against Katherine Wise Gentry.

_____
FRANK G. CLEMENT JR., P.J., M.S.